PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CYNTHIA A. ZISKIE,

*Plaintiff-Appellant,*

v.

NORMAN Y. MINETA, Secretary,
Department of Transportation,

*Defendant-Appellee.*

No. 06-2060

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(1:05-cv-01229-CMH)

Argued: September 26, 2008

Decided: November 14, 2008

Before WILKINSON, NIEMEYER, and DUNCAN,
Circuit Judges.

Affirmed in part, vacated and remanded in part by published
opinion. Judge Wilkinson wrote the opinion, in which Judge
Niemeyer and Judge Duncan joined.

## COUNSEL

**ARGUED**: Ellen Kyriacou Renaud, SWICK & SHAPIRO,
P.C., Washington, D.C., for Appellant. Kevin J. Mikolashek,

OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** David H. Shapiro, Richard L. Swick, SWICK & SHAPIRO, P.C., Washington, D.C., for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

---

## OPINION

WILKINSON, Circuit Judge:

Plaintiff Cynthia Ziskie appeals the grant of summary judgment on her Title VII claims in favor of defendant the Secretary of Transportation, who administers the Federal Aviation Administration (FAA), Ziskie's former employer. She alleges that the defendant created a sexually hostile work environment and retaliated against her for asserting her rights. Because in considering the evidence the district court seemed to feel itself constrained in a way that is inconsistent with circuit precedent and with our civil justice system's basic notions of relevance, we vacate and remand on the hostile work environment claim. We affirm on the retaliation claim.

I.

On appeal of a grant of summary judgment, we "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Cynthia Ziskie worked as an air traffic controller (ATC) at the FAA's Washington Air Route Traffic Control Center (the Washington Center) in Leesburg, Virginia. The Washington Center manages the flow of air traffic to and from other regional centers. Ziskie became an ATC in 1982; she served in that position until her retirement in June 2005.

Beginning in 1991 and continuing into 2002, Ziskie had a part-time schedule, and worked Mondays, Tuesdays, and Wednesdays. On April 1, 2002, employees at the Washington Center were notified that part-time employment would no longer be available beginning May 5, 2002. Ziskie asked for an extension of her part-time schedule in order to make childcare arrangements, but her request was denied. After she was moved to a full-time schedule, Ziskie called in sick for eight straight weeks every Thursday and Friday, the days she previously had off. As a result, she was reprimanded for abusing sick leave. Part-time schedules were reinstated in the fall; Ziskie worked only one full-time week during the entire period that part-time schedules were unavailable.

Shortly after the cancellation of part-time schedules, Ziskie complained in a memo that she was experiencing sexual harassment at the Washington Center. Ziskie began keeping a diary in which she recorded co-workers' comments that she found offensive. On May 30, 2002, Ziskie filed a formal complaint with the Department of Transportation's (DOT) Office of Civil Rights.

Ziskie alleged, as she alleges in the present litigation, that she and all other female ATCs at the Washington Center "have been and are being subjected to a continuing atmosphere of harassment and intimidation on-the-job by male ATCs with the acquiescence [of] management" and that she had suffered retaliation for complaining about the harassment. Ziskie stated in her complaint that "unremitting use of profanity, sexual innuendos, mass flatulence, and other behaviors designed and intended to make female workers uncomfortable and ill at ease" created a hostile work environment.

There are essentially four different features of the workplace that Ziskie points to as creating a hostile work environment. First, profanity and other crude language and behavior, such as belching, were commonplace. For example, male controllers often referred to pilots as "dick head pilot[s]." Ziskie

heard one co-worker call a supervisor a "stupidvisor"; another told a female supervisor to "fuck off." Male controllers found it amusing to intentionally pass gas in the presence of other employees, including Ziskie.

Second, Ziskie points to a number of sexist comments directed to other employees or not directed to anyone in particular. Some of these comments Ziskie heard herself. They include: a co-worker called another woman "an alien with big boobs"; a male controller talked about a party where women were wearing "tit-teasing sweaters"; when two male co-workers discussed a former female co-worker, one called her a "chick," and the other said she had breast enhancement; and male controllers, including a male supervisor, laughed when a male controller made a sexual comment about a female supervisor. Other conduct Ziskie did not witness, but was described in affidavits of other female employees submitted by Ziskie. Examples include: when a female controller was pregnant, male controllers made fun of her breasts; someone wrote on the men's room wall that a female employee "has big tits"; male ATCs told female co-workers that they should be taking care of their children instead of working; and male employees told a female co-worker that they were upset that she wore shorts instead of pants.

Third, Ziskie claims that FAA Supervisors gave preference to male employees in making their schedules. She recalls a number of instances in which she feels male employees unjustifiably received days off that she had requested, or otherwise got preferential treatment over her or other female employees.

Finally, Ziskie claims she was frequently treated with hostility by a number of her male co-workers. A male controller loudly questioned how Ziskie had been able to keep her job. A supervisor told her that she should quit because her husband worked. Ziskie's treatment by co-workers worsened after she began to complain to supervisors about her treatment, which she did repeatedly. For example, a male control-

ler working a different sector of airspace who was "handing off" a plane into Ziskie's sector called Ziskie a "fucking moron." After she complained to management, several other male co-workers called each other "moron" jokingly in front of Ziskie. Afterwards, she contends, co-workers who were supposed to be cooperating with or assisting Ziskie during flight control procedures actively thwarted her.

In one instance, she says a co-worker removed the equipment Ziskie needed to do her job; in another, a male controller handed off a plane into Ziskie's sector, putting it on a collision course with other planes which Ziskie had to divert. Another co-worker told Ziskie, when she tried to look at the work logs in which the arrival and departure times of employees were noted, that she had "been warned"; when she later tried to look at them again, he yelled at her. In November 2003, Ziskie found that her tires had been slashed in the parking lot at work. There is, however, nothing in the record indicating who slashed them, or why. Several co-workers made negative or mocking remarks to Ziskie about the complaints she had made, and she heard indirectly about other negative remarks made about her complaints.

Ziskie complained about all of the above conduct to management. A study commissioned by management concluded that seven employees believed the bay in which Ziskie worked had problems involving gender relations. However, no one was disciplined as a result of the complaints or the study.

On July 22, 2005, in an extensive opinion, the DOT's Civil Rights Office made a formal finding that no discrimination had occurred. The agency determined that both males and females at the Washington Center used profanity and other offensive language, and that Ziskie could not show that any harassment was caused by her gender or by her sexual harassment allegations. It found that the behavior that Ziskie described would not substantially affect a reasonable person's

work environment, as required by *Oncale v. Sundowner Off-shore Services, Inc.*, 523 U.S. 75 (1998). Regarding Ziskie's claim of retaliation, the agency concluded that the letter of reprimand that Ziskie received was because of her abuse of sick leave, not her assertion of her rights.

On October 24, 2005, Ziskie filed the present Title VII action in the U.S. District Court for the Eastern District of Virginia. The district court granted summary judgment for defendant on the hostile work environment claim on the ground that the treatment experienced by plaintiff was not pervasive or severe enough to create an abusive work environment. The district court granted summary judgment for the defendant on the retaliation claim on the ground that plaintiff had not shown an adverse employment action taken against her, or a causal connection between her protected activities and any asserted adverse action. In the memorandum accompanying its order, the district court stated that "the offensive language and conduct described in the affidavits of [Ziskie's] co-workers and not experienced firsthand by [her] has no bearing on [her] Title VII claim in this case and are disregarded by the Court." Ziskie now appeals.

## II.

We first turn to Ziskie's hostile work environment claim. Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for any employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). To make out a claim against her employer for creating a hostile work environment because of sexual harassment under Title VII, a plaintiff must show "that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Productions, Inc.*,

335 F.3d 325, 331 (4th Cir. 2003) (en banc) (citing *Spicer v. Va., Dep't of Corr.*, 66 F.3d 705, 710 (4th Cir. 1995) (en banc)).

The district court held that Ziskie did not show that her treatment was severe or pervasive enough to rise to the level of an abusive work environment. Defendant argues that the district court's refusal to consider the affidavits of other female employees in reaching this conclusion was correct, "[f]or it is clear that only offensive language used in the plaintiff's presence is relevant to her hostile environment claim." *Brief of Appellee* at 17. This argument is inconsistent with the principles we have established in our precedent. In *Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001), we rejected the contention that only conduct *directed at* the plaintiff could be considered in evaluating a hostile work environment claim. Rather the inquiry was the nature of the workplace environment, "and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor." *Id.* at 184.

Likewise, in reversing a grant of summary judgment for the defendant in a Title IX claim in *Jennings v. University of North Carolina*, 482 F.3d 686 (4th Cir. 2007) (en banc), we reaffirmed this principle, and noted that in reviewing hostile environment cases "[a]ll the circumstances are examined . . . . Evidence of a general atmosphere of hostility toward those of the plaintiff's gender is considered in the examination of all the circumstances." *Id.* at 696; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.").

We reiterated this principle most recently in *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306 (4th Cir. 2008), where we held that testimony by the defendant's customers that the workplace in question was rife with hostility to Muslims was relevant to the plaintiff's hostile work environment claim. *Id.*

at 317 (citing *Jennings*, 482 F.3d at 695; *Spriggs*, 242 F.3d at 184). Even though the plaintiff had not experienced the specific conduct at issue in the customers' testimony, their statements were nonetheless relevant because they supported plaintiff's claims.

The district court's rejection of the affidavits submitted by Ziskie's co-workers regarding conduct not witnessed by Ziskie is inconsistent with the principles expressed in these cases. When examining all the circumstances of a plaintiff's workplace environment, evidence about how other employees were treated in that same workplace can be probative of whether the environment was indeed a sexually hostile one, even if the plaintiff did not witness the conduct herself. Hostile conduct directed toward a plaintiff that might of itself be interpreted as isolated or unrelated to gender might look different in light of evidence that a number of women experienced similar treatment.

Of course, conduct experienced by the plaintiff may well be *more* probative of a hostile workplace than is conduct the plaintiff did not herself witness. But that goes to the weight evidence should be given, not its relevance or admissibility. A blanket refusal to consider conduct not witnessed by the plaintiff is inconsistent with the Federal Rules of Evidence and Civil Procedure. Under the Rules of Evidence, "[a]ll relevant evidence is admissible" unless specifically prohibited, Fed. R. Evid. 402, and "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. These principles apply to summary judgment motions; under the Federal Rules of Civil Procedure, oppositions to summary judgment may be supported by affidavits if those affidavits are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).

The Rules of Evidence thus adopt a presumption in favor of admitting relevant evidence, and leave it up to the finder of fact to assign it proper weight. This approach is preferable to *per se* restrictions cordoning off certain types of evidence from district court consideration; such limitations are inconsistent with the proper relationship between appellate and trial courts. Judges and juries do not merely assign weight when finding facts at trial; trial courts perform this task in the first instance when assessing genuineness and materiality on summary judgment. It is not the role of appellate courts to say consider A but not B. That would shrink the universe of relevant evidence from which truth may be distilled.

In this case, the district court appeared to misunderstand the relevance of the affidavits of Ziskie's co-workers. Even if Ziskie did not witness the conduct described therein, it is nonetheless relevant because it could contribute to the evidence offered to show that the workplace environment at the Washington Center was indeed a hostile one. Evidence that many of Ziskie's co-workers experienced treatment similar to that claimed by Ziskie could lend credence to Ziskie's claims about her own treatment, show that the harassment she alleges was indeed pervasive, or support a finding that she was treated badly by co-workers because of her gender, and not some other reason.

Because of the possibility that the district court when evaluating defendant's summary judgment motion did not appropriately consider the affidavits from plaintiff's co-workers, which are relevant to whether the plaintiff's work environment was hostile, we vacate and remand to the district court on the hostile work environment claim so that the district court can assess the affidavits and determine what weight they should be given.

### III.

Although we believe a remand is necessary for the reasons outlined above, that disposition should not be misconstrued.

The same circuit precedent that suggests a remand likewise suggests the weaknesses of plaintiff's claim.

Specifically, even under the evidentiary framework set forth herein, Ziskie will still need to show a triable issue on the second and third elements of a sexually hostile work environment claim: that the alleged harassment was because of her gender, and that the conduct was severe or pervasive enough to alter her working conditions. Our analysis is simply meant to offer guidance on whether or not Ziskie's claims are sufficient to permit the case to proceed to trial.

A.

The conduct of which Ziskie complains must be gender-based. In *Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000), we held that "[a]n employee is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination." *Id.* at 242. A plaintiff "may prove sex-based discrimination in the workplace even though she is not subjected to sexual advances or propositions," but can succeed only by showing that she "is the individual target of open hostility because of her sex." *Ocheltree*, 335 F.3d at 331 (citing *Smith*, 202 F.3d at 242-43). Ziskie alleges that she was the target of open hostility, but the evidence must allow a reasonable jury to conclude that her mistreatment was due to her gender.

In this regard, harassment due to personality conflicts will not suffice. Some persons, for reasons wholly unrelated to race or gender, manage to make themselves disliked. That Ziskie did not get along with others is clear, but it is anything but clear that this unfortunate state of affairs had much to do with sex. The first sexual harassment allegation by Ziskie that is on record was made only after her part-time schedule was cancelled. While Ziskie complains that the Washington Center was permeated with foul language for her entire time

there, virtually all of the specific incidents of harassment directed at her occurred after the summer of 2002, when she abused her sick leave in order to retain her old part-time schedule when she was supposed to be working full-time. So far as the record shows, Ziskie's co-workers were working full weeks while she was enjoying four-day weekends. For reasons unrelated to sex, this behavior was unlikely to endear Ziskie to her colleagues.

Co-workers might also not take warmly to the fact that Ziskie was meticulously recording in her diary every conceivably offensive comment they made and every instance in which they did not help her as much as she thought was appropriate. Her fellow workers might well resent her openly examining the log files to determine when they arrived at and left work. The record indicates that Ziskie's co-workers believed that she was "keeping book" on them, as Ziskie's supervisor stated in his deposition. Indeed, some of the harassment of which Ziskie complains directly relates not to gender but to the fact that Ziskie's colleagues thought that she was gratuitously tracking them – for example, she points to the fact that one colleague on three separate occasions told her not to look at the log files. While other workplace rules or regulations may or may not protect Ziskie's conduct, these do not relieve her of the need to show that her unhappy experience at work was because of her sex.

The possibility that Ziskie's treatment was not related to her gender but rather to co-workers' specific personal issues with her is underscored by the fact that most of the comments and behavior of which Ziskie complains were not about her sex. Ziskie's complaints include that she was called a "fucking moron," that her co-workers failed to cooperate with her flight control procedures, and that a co-worker enjoyed passing gas in her presence. Such behavior may well be hostile, but it is a far cry from the obviously sex-related conduct in *Jennings*, where a male soccer coach incessantly talked about his female players' sex lives and bodies, *see* 482 F.3d at 691-

94, or in *Ocheltree*, where male employees repeatedly demonstrated sexual practices on a mannequin in front of the plaintiff. *See* 335 F.3d at 328. Ziskie was not subjected to repeated use of sexual epithets directed at her, unlike the plaintiffs in *Spriggs* or *Sunbelt Rentals*, who were subjected to barrages of demeaning epithets. *See Spriggs*, 242 F.3d at 184-86; *Sunbelt Rentals*, 521 F.3d at 310-12.

Certainly, some conduct of which Ziskie complains was gender-related — such as Ziskie's co-workers' discussions about sexual practices, and the use of offensive words like "chick" to describe a woman. But on remand Ziskie must demonstrate under the standards set forth in section II that a reasonable jury could see the hostility as a product of gender animus rather than the kind of personality conflict that pervades many a workplace.

## B.

Ziskie must also address on remand the third element of any hostile sexual environment claim: whether the conduct was "severe or pervasive" enough to create an abusive work environment. There are "both subjective and objective components" to this element. *Ocheltree*, 335 F.3d at 333 (citing *Harris*, 510 U.S. at 21-22). The environment must be perceived by the victim as hostile or abusive, and that perception must be reasonable. *Harris*, 510 U.S. at 22. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23).

For present purposes we accept that Ziskie perceived her treatment to be severe. But the alleged harassment, even if because of gender, must still be objectively as severe as that in cases that we have allowed to go to a jury. Even under the more permissive standards set forth in section II, Ziskie must

still address on remand the salient differences between the facts of this case and the hostile work environment claims that have succeeded in our circuit.

Severity inquiries in our earlier cases have often involved a disparity in power between the harasser and the victim. In *Jennings*, we observed that the victim was a seventeen year-old girl, and the harasser was a 45 year-old man, who, as the coach of the victim's soccer team, had a huge amount of power over the victim. 482 F.3d at 697. In *Ocheltree*, the victim's supervisor often participated in the harassment the victim alleged. 335 F.3d at 328-29. In reversing a grant of summary judgment for the defendant in *E.E.O.C. v. R&R Ventures*, 244 F.3d 334 (4th Cir. 2001), we emphasized that the harasser "was an adult male in a supervisory position over young women barely half his age." *Id.* at 340. The employee in *Spriggs* was harassed by his immediate supervisor. 242 F.3d at 182. Unlike those cases, Ziskie alleges harassment almost entirely by her co-workers, not her supervisors. She alleges one or two instances of supervisor harassment, such as when a supervisor told her that she should not work because her husband had a job, but this does not remotely resemble the repeated harassing conduct by someone in a position of authority that was described in other cases.

Quite simply, Ziskie does not allege that anyone so much as placed his hand upon her. She does not allege that anyone repeatedly questioned her about her sex life, as did the harasser in *Jennings*. *See* 482 F.3d at 696-98. She does not assert that co-workers went out of their way to disgust her and make her uncomfortable by graphic demonstrations of sexual acts, as did the harassers in *Ocheltree*. *See* 335 F.3d at 328. She does not claim that she was subjected to demeaning epithets, unlike the plaintiff in *Spriggs*, *see* 242 F.3d at 184-86 (racial epithets), or *Sunbelt Rentals*, *see* 521 F.3d at 311 (religious epithets). She does not suggest that she was subject to frequent comments about her body in front of co-workers, as was the plaintiff in *R&R Ventures*. *See* 244 F.3d at 337-38.

What Ziskie does describe is a workplace in which employee interactions could sometimes assume a coarse or boorish tone. But while no one condones boorishness, there is a line between what can justifiably be called sexual harassment and what is merely crude behavior. Profanity, while regrettable, is something of a fact of daily life. Flatulence, while offensive, is not often actionable, for Title VII is not "a general civility code." *Oncale*, 523 U.S. at 81. The occasional off-color joke or comment is a missive few of us escape. Were such things the stuff of lawsuits, we would be litigating past sundown in ever so many circumstances.

Our discussion here is not meant to be conclusive with regard to Ziskie's hostile environment claim. If the problems alleged reflect no more than sporadic or occasional instances or the kind of tensions that accompany any stressful workplace environment, that would be one thing. If the district court were to find on remand that there existed an environment where female air controllers found their working conditions altered and compromised on account of a severe or pervasive atmosphere of gender animus, that would be something else. The question is one of degree: any employee must be expected to accommodate the normal run of aggravations that are part of holding a job, but no employee should have to suffer severe or pervasive gender bias that would prevent her from fulfilling the vital role of ensuring public safety in the air.

Thus on remand, the district court must decide whether, given the evidence that properly belongs in the summary judgment record, Ziskie's perception of a hostile sexual environment claim was an objectively reasonable one. For example, several of the co-worker affidavits allude to problems in the coordination of handoffs between one air traffic controller's sector and another. It is possible that it can be fairly said as a matter of law that these are occasional instances that are insufficiently oppressive or inadequately related to gender to

constitute harassment, but the district court must assess them under the correct standard and in the appropriate context.

The reason that Ziskie's perception of harassment must be objectively reasonable to create a cause of action under Title VII is to prevent courts from being drawn further and further into the workplace and having to delineate ever more intricate rules about what kinds of interactions are or are not acceptable between co-workers. There are limits to the extent that the refined sensibilities of judges can be embodied in general workplace etiquette. Title VII "does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale*, 523 U.S. at 81. Our cases have sought to distinguish between those situations that indeed present serious impediments to minority and female workers and those situations when human nature simply is not at its best. Thus while Ziskie will have the benefit of proper evidentiary standards on remand, she must still surmount the objectively "severe" or "pervasive" evidentiary threshold set forth by the Supreme Court.

IV.

Finally, we turn to Ziskie's retaliation claim. To succeed on a retaliation claim, plaintiff must prove that (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

At the outset we note that there is disagreement about whether the Supreme Court's decision regarding the scope of the adverse action requirement in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), applies to federal employees. We do not reach this question, for we conclude that Ziskie's claim of retaliation fails regardless

because Ziskie is unable to show that the adverse employment action she alleges was causally connected to her complaint of discrimination.

Ziskie alleges that her co-workers retaliated against her for asserting her Title VII rights, but there is scant support for this claim in the record. She points, for example, to her tires being slashed, and alludes to the possibility that this was done by a co-worker, but adduces not a scintilla of evidence showing who did this, or why. She claims that the letter of reprimand she received on August 12, 2002 was sent in retaliation for her claims of sexual harassment. But the record reflects that the reprimand was issued because of Ziskie's repeated abuse of her sick leave in order to avoid having to work full-time despite the cancellation of part-time schedules. Workers are shielded from retaliation on account of their assertion of rights protected under Title VII. But a complaining worker is not thereby insulated from the consequences of insubordination or poor performance. Accordingly, we affirm the district court in its grant of summary judgment on the retaliation claim.

V.

For the foregoing reasons, we affirm the dismissal of Ziskie's retaliation claim and vacate and remand on her hostile environment claim. On remand, Ziskie will have the opportunity to demonstrate under appropriate evidentiary standards a triable issue on the various elements of her hostile sexual environment claim. But as Supreme Court and circuit precedent make clear, plaintiff has a task ahead on the animus and severity prongs of her action. Whether or not this case should proceed to trial is, of course, for the able district court to determine in the first instance. We in no way fault the court for failing to anticipate decisions that issued after its own ruling. The judgment is hereby

*AFFIRMED IN PART,*
*VACATED AND REMANDED IN PART.*