**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-2117**
_____

JOSE LUIS RAMOS, an individual,

    Plaintiff - Appellant,

  v.

MOLINA HEALTHCARE, INC., a Delaware Corporation; MOLINA
INFORMATION SYSTEMS, LLC, a California Limited Liability
Company; DOES, 1 through 10,

    Defendants – Appellees.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Gerald Bruce Lee, District
Judge.  (1:12-cv-00856-GBL-JFA)

_____

Argued:  January 27, 2015    Decided:  March 16, 2015

_____

Before KEENAN, WYNN, and FLOYD, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Keenan wrote the
opinion, in which Judge Wynn and Judge Floyd joined.

_____

ARGUED: Andrew Field Pierce, PIERCE & SHEARER LLP, Palo Alto,
California, for Appellant.  John Joseph Michels, Jr., LEWIS
BRISBOIS BISGAARD & SMITH LLP, Chicago, Illinois, for Appellees.
ON BRIEF:  Gretchen Birkheimer, PIERCE & SHEARER LLP, for
Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider whether the district court erred in dismissing a civil action against the plaintiff's former employer, in which the plaintiff alleged claims of discrimination, retaliation, and wrongful discharge under various state and federal laws. Upon our review, we hold that the district court did not err in determining that the plaintiff's pleadings were inadequate to state claims for certain violations of California law, and claims of discrimination based on race and national origin under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. We also hold that the district court correctly awarded summary judgment to the employer on the plaintiff's age discrimination and retaliation claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., based on the plaintiff's failure to produce evidence regarding the causation element of those claims. Accordingly, we affirm the district court's judgment.

I.

In 2007, Jose Luis Ramos, a 55-year-old person of Puerto Rican heritage, was hired by Unisys Corporation to work as an executive architect in its Medicaid Information Systems Unit. In May 2010, that division of Unisys Corporation was acquired by

2

Molina Healthcare, Inc. and Molina Information Systems, LLC (collectively, Molina). Molina retained Ramos as an engineering director, in which capacity he managed a team of about 40 employees.

According to Ramos, his supervisor at Molina, Timothy Skeen, instructed Ramos to fire certain employees on his team including Erich Friedrichs, an employee over the age of 55 whom Skeen often disparaged as being "too old," "slow," and "incompetent." Because Ramos disagreed with Skeen's assessment, he refused to fire Friedrichs.

On several occasions beginning in the spring or summer of 2010, Ramos expressed concerns to April Krajewski, a human resources manager at Molina, that Skeen's desire to fire Friedrichs was motivated by age-based animus. Krajewski replied that termination of employment on the basis of age was prohibited, and that she would investigate any complaints of this nature.

In December 2010, Ramos began reporting to a new supervisor, Timothy Brewer, with whom Ramos previously had worked. Ramos alleged in his complaint that Brewer "disliked persons of Hispanic descent" and once had stated to Ramos that Brewer did not work in his home state of Arizona "because there were 'too many damn Mexicans there.'" Ramos also asserted that both Brewer and Skeen "exhibited a strong dislike of Hispanic,

3

Chinese-American, and Taiwanese workers," and, when making hiring and promotion decisions, manifested "a strong preference for younger employees, white Americans of southern extraction[,] and independent contractors from India."

Ramos further alleged that when Brewer became his direct supervisor in December 2010, Brewer "immediately reassigned" all the employees on Ramos' team, "leaving [Ramos] with no projects and no staff." According to Ramos, Brewer stated that he made the team reassignments based on Ramos' refusal to fire Friedrichs. Brewer, however, testified by deposition that he told Ramos that the reassignments were part of an organizational restructuring.

In January 2011, Brewer chose Ramos to lead a "massive" project to upgrade software and relocate data servers (the project). Brewer testified that he was not satisfied with Ramos' handling of the project, in part based on Ramos' objection to the use of Indian contractors on the project.[1] Brewer also testified that throughout the course of the project,

---

[1] Ramos also alleged in his complaint that around this time, he had received information that senior managers at Molina were taking "kick-backs" in exchange for the award of subcontracts, and that he reported this information to his supervisors shortly before the termination of his employment. However, on appeal, Ramos clarified his position that it was his reports concerning Skeen's allegedly discriminatory behavior, not his reports about kick-backs, that caused his termination.

he received complaints from colleagues who were "very concerned" about continuing to work with Ramos and who thought that Ramos acted in a derogatory manner toward other employees. Brewer described a complaint he received from one employee, who stated that Ramos "lost it" and "scream[ed] at the top of his lungs" during a conference call.[2]

According to Brewer, two events during the course of the project drove his final decision to terminate Ramos' employment. First, Brewer stated that Ramos threatened not to attend certain key meetings on the project so that Brewer "would see how important [Ramos] was." Second, Brewer testified that he received information that Ramos had initiated a "very belligerent" encounter with another employee. Brewer stated that he ultimately fired Ramos due to his "lack of performance," "inability to deliver on [the] project," and negative interactions with other employees that put both the company and the project "at risk."

Ramos denied that either of the above two events described by Brewer had occurred. Ramos maintained that he had not received any job-related criticism or complaints regarding the

---

[2] We note, however, that a colleague who worked "side-by-side" with Ramos submitted a declaration stating that Ramos "was not belligerent or inappropriate in any way on any of the phone calls" in which the colleague participated.

way he treated his fellow employees. Ramos further noted that he had received an email from Brewer in February 2011, stating that Brewer "greatly appreciate[d]" Ramos' work and wanted to demonstrate his "support of [Ramos] and the project [Ramos was] running."

In March 2011, however, Molina terminated Ramos' employment. Ramos alleged that he was not told initially that his termination was for cause, and he assumed that he was being laid off because Molina had offered him severance pay. Later, Ramos learned that he had been fired for cause, and that his position had been filled by a younger, non-Hispanic employee. Ramos filed a complaint with the Equal Employment Opportunity Commission (EEOC), which issued Ramos a "right to sue" letter in December 2011.

In March 2012, Ramos filed a complaint in the United States District Court for the Central District of California, alleging claims of age discrimination and retaliation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. (collectively, the ADEA claims), claims of race and national origin discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (collectively, the civil rights claims), and various discrimination, retaliation, and "whistleblowing" claims under California law (collectively, the state law claims). The

6

district court in California found that because Ramos' complaint was "silent on the location where the instances of employment discrimination occurred," Ramos had not demonstrated a "significant connection to California." The court therefore transferred the case to the Eastern District of Virginia, where the record showed that Ramos lived, worked, and was fired by Molina.

Upon the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the district court found that the complaint sufficiently stated claims for age discrimination and retaliation under the ADEA, but dismissed without prejudice the state law claims and the civil rights claims. The court found that the state law claims failed to include facts demonstrating that Ramos "lived, worked, and actively was engaged with supervising employees . . . in California," notwithstanding Ramos' submission of a declaration alleging that he lived and worked in California "off and on" during his employment with Molina. The court also noted that the "conclusory" allegations forming the civil rights claims failed to draw a connection between animus involving race or national origin and any adverse employment action.

After the parties conducted discovery on the two remaining ADEA claims, the district court granted summary judgment on those claims in Molina's favor. Initially, the court found that

7

Ramos had failed to meet his prima facie burden of proof on either claim. With respect to the age discrimination claim, the court noted that Ramos did not present any evidence showing that he had met his employer's legitimate expectations at the time he was fired and, therefore, had failed to show that age was the "but-for" cause of the adverse employment action. Similarly, with regard to the retaliation claim, the court found that Ramos had failed to produce evidence establishing a causal connection between his reports to Krajewski about Skeen's age-based animus and any adverse employment action.

The district court further concluded that even if it were to assume that Ramos had met his prima facie burden on the claims of age discrimination and retaliation, he nevertheless had failed to rebut as pretextual Molina's reasons for terminating his employment. Ramos timely appealed from the district court's judgment.

## II.

We first address the district court's dismissal of Ramos' state law claims and civil rights claims under Rule 12(b)(6). In reviewing the court's dismissal of those claims, we consider the factual allegations in Ramos' complaint as true and review any legal issues de novo. See Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764 (4th Cir. 2003).

8

A.

Ramos' complaint contains several claims asserted under California law. Those claims include allegations of discrimination, failure to investigate discrimination, and retaliation in violation of the California Fair Employment and Housing Act (CFEHA), Cal. Gov't Code § 12900 et seq.; wrongful discharge under the California Labor Code, see Cal. Lab. Code § 1102.5; and discrimination and wrongful discharge in violation of California public policy.

Ramos argues that the district court improperly dismissed these state law claims by relying on materials outside the complaint to find that he failed to allege a sufficient connection to California. Ramos contends that he sufficiently pleaded the required nexus to California by alleging that he was a California resident, and that the district court improperly considered a declaration submitted by Molina stating that Ramos lived and worked in Virginia during the course of his employment.

We conclude that the district court did not err in dismissing Ramos' state law claims. The California laws and public policy invoked by Ramos in his complaint have not been construed by California courts as applying extraterritorially. See Campbell v. Arco Marine, Inc., 50 Cal. Rptr. 2d 626, 633 (Cal. Ct. App. 1996) (stating that the CFEHA does not "apply to

non-residents employed outside the state when the tortious conduct did not occur in California"); see also N. Alaska Salmon Co. v. Pillsbury, 162 P. 93, 94 (Cal. 1916) ("Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect.").

Instead, the holdings of the California courts reflect the constitutional principle that, generally, when "a State has only an insignificant contact with the parties and the occurrence or transaction, application of its law is unconstitutional." Allstate Ins. Co. v. Hague, 449 U.S. 302, 310-11 (1981). Thus, for Ramos' complaint to have stated facially plausible claims to relief under California law, the complaint had to contain sufficient facts connecting the parties and their alleged misconduct to California. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

We agree with the district court that the allegations in Ramos' complaint lack the necessary factual connection. Although Ramos alleged that he was a California resident, his complaint did not indicate whether he lived or worked in California during his employment with Molina when the allegedly discriminatory, retaliatory, and otherwise wrongful conduct occurred. See Diamond Multimedia Sys., Inc. v. Superior Court,

10

968 P.2d 539, 554 n.20 (Cal. 1999) ("The presumption against extraterritoriality is one against an intent to encompass conduct occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute.") (emphasis in original).

Additionally, contrary to Ramos' contention, the district court did not rely on documents outside the complaint in dismissing the state law claims. Instead, the court restricted its analysis to the facts stated in the complaint, concluding that Ramos "has not set forth facts demonstrating that he lived, worked, and actively was engaged with supervising employees in . . . California at the time of the adverse employment action." Accordingly, the district court properly dismissed Ramos' state law claims.

B.

Ramos next argues that the district court erred in concluding that the civil rights claims failed to establish a causal connection between his supervisor's alleged discriminatory animus and the adverse action terminating his employment. Ramos contends that, when construed in the light most favorable to him, his allegation that his supervisors "dislike[d]" Hispanic workers supported "inferences" that his employment was terminated because of his race or national origin. Again, we disagree with Ramos' argument.

11

In the employment discrimination context, a plaintiff must sufficiently allege facts that support the elements of the plaintiff's claim. In particular, to state claims under 42 U.S.C. §§ 1981 and 2000e-2, Ramos was required to allege sufficient facts to show that the defendants terminated his employment "because of" his race or national origin. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190-91 (4th Cir. 2010) (citation omitted); Francis v. Giacomelli, 588 F.3d 186, 195 (4th Cir. 2009).

The district court correctly found that this required element of Ramos' wrongful termination claim was not supported by the factual allegations in his complaint. Apart from some conclusory allegations of causation, Ramos merely alleged that Brewer once made a derogatory statement about Hispanics and that Ramos' supervisors generally disliked Hispanics. Moreover, Ramos failed to supply any connection between these allegations and the termination of his employment. To the extent that Ramos urges us to draw "inferences" in his favor based on his allegations, we conclude that any such "inferences" are unwarranted, given the complete lack of factual support in the record that his supervisors considered his race or national origin in deciding to terminate Ramos' employment. See Coleman, 626 F.3d at 191 (affirming dismissal of a complaint that "does not assert facts establishing the plausibility" of a conclusory

12

allegation of discrimination).  Therefore, we hold that the district court did not err in dismissing Ramos' civil rights claims.

## III.

We turn to address the district court's award of summary judgment to Molina on the ADEA claims.  We review the court's decision de novo, applying the same legal standards as the district court and viewing all facts and reasonable inferences drawn from those facts in the light most favorable to Ramos, the nonmoving party.  Turner v. United States, 736 F.3d 274, 280 (4th Cir. 2013).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id. (quoting Fed. R. Civ. P. 56(a)).

## A.

We first address Ramos' claim of age discrimination under the ADEA, which provides a cause of action against an employer for "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Ramos argues that the district court erred in concluding that he failed to establish the required element under the ADEA that age was the

13

"but-for" cause of the adverse employment action. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176–77 (2009).

Evidence of but-for causation may be direct or circumstantial. Id. at 177-78. In this case, in which the evidence of such causation is circumstantial, we analyze the plaintiff's claim under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Mereish v. Walker, 359 F.3d 330, 334-35 (4th Cir. 2004); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (noting that the courts of appeals, including the Fourth Circuit, "have employed some variant of the framework articulated in McDonnell Douglas to analyze ADEA claims that are based principally on circumstantial evidence"). Under this framework, the plaintiff first must prove a prima facie case of discrimination, which includes as an element that the plaintiff "was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action."[3]  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).

---

[3] Molina does not dispute that Ramos satisfied his burden of establishing the other elements of a prima facie case of age discrimination, which requires proof that the employee is "a member of a protected class," that he "suffered adverse employment action," and that "the position remained open or was filled by similarly qualified applicants outside the protected (Continued)

14

When the plaintiff's evidence satisfies the elements of a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. Id. If the employer satisfies this burden of production, the burden shifts back to the employee to prove by a preponderance of the evidence that the employer's stated reason was a mere "pretext" for discrimination. Id. To make such a showing of pretext, the employee must demonstrate that the employer's proffered reason was false, and that age discrimination was the real reason for the adverse employment action. Reeves, 530 U.S. at 146-47; Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

In the present case, the district court held that Ramos failed to establish a prima facie case of age discrimination because he did not present evidence that, at the time he was fired, he had performed at a level meeting his employer's legitimate expectations. The court considered the February 2011 email from Brewer commending Ramos for his performance, as well as the absence of documentation showing any unsatisfactory job performance, but found that those items did "not establish the employer was satisfied but more readily establish the inverse—

class." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).

that the employer was not <u>dissatisfied</u>." (Emphases in original). The court further observed that even if Ramos had established a prima facie case of discrimination, he had failed to sustain his burden of proving as pretextual the non-discriminatory reasons Molina articulated for firing him, namely, his negative interpersonal interactions with fellow employees, failure to follow instructions, unsatisfactory performance on the project, threats to cease work on the project, and unprofessional conduct during a conference call.

In examining this issue, we will assume, without deciding, that Ramos satisfied his initial burden to make a prima facie showing that, at the time he was fired, he was meeting his employer's legitimate expectations. Nevertheless, we conclude that the district court correctly determined that Ramos had failed to rebut as pretextual Molina's stated reasons for terminating his employment. Apart from the email from Brewer in February 2011, a co-worker's statement concerning Ramos' demeanor on conference calls, and Ramos' conflicting account of the two incidents discussed by Brewer, Ramos presented no other evidence to rebut Molina's stated reasons for terminating his employment. In contrast, Molina offered significant evidence in support of its proffered reasons, including Krajewski's notes from a meeting with an employee who complained about Ramos' unprofessional "melt-down" during a conference call, emails from

16

January 2011 in which Brewer and Skeen criticized Ramos' performance, and testimony that Brewer witnessed Ramos berate co-workers and received complaints about Ramos from other employees.

Moreover, Ramos failed to produce any evidence supporting a conclusion that age discrimination was the real reason for his firing. While, in certain cases, a court may infer discrimination based on the strength of a plaintiff's prima facie showing and the probative value of the plaintiff's evidence that the employer's reasons for the adverse employment action were false, Reeves, 530 U.S. at 148-49, the district court properly declined to draw such an inference here given the tenuous nature of Ramos' evidence. Therefore, we hold that the district court properly awarded summary judgment in favor of Molina on the ADEA claim of age discrimination, because Ramos failed to satisfy his burden of showing that age was the "but-for" cause of his termination. Gross, 557 U.S. at 177-78.

## B.

Finally, we turn to consider Ramos' ADEA retaliation claim. In relevant part, the ADEA prohibits an employer from discriminating against an employee "because such individual, member or applicant for membership has opposed any practice made unlawful by this section," including discharging an employee based on age. 29 U.S.C. § 623(d).

17

Ramos primarily argues that the district court erred in concluding that he failed to establish a causal link between his protected activity and any adverse employment action. Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008). Ramos asserts that the district court failed to consider the circumstantial evidence he provided concerning the timing of his protected activity and the adverse employment action, as well as his direct evidence that Brewer told Ramos that his team was being taken away because he refused to fire Friedrichs. We find no merit in Ramos' argument.

To establish his retaliation claim under the ADEA, Ramos was required to produce sufficient evidence at the summary judgment stage showing that: (1) he engaged in protected activity; (2) Molina took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. See id. However, Ramos failed to establish the causation element by producing any evidence showing that Brewer, the undisputed decision maker with respect to the adverse employment action, was aware when he fired Ramos that Ramos had reported to Krajewski his concerns about Skeen's discriminatory animus toward Friedrichs. Although Ramos asserted that Brewer was aware of Ramos' refusal to follow Skeen's instruction to fire Friedrichs, the protected activity in this case was not Ramos' refusal to follow that directive,

18

but rather Ramos' complaints to Krajewski about Skeen's comments regarding Friedrichs. As the district court correctly observed, Ramos did not produce any evidence showing that Brewer had knowledge of the content of Ramos' discussions with Krajewski.[4] Accordingly, we hold that the district court did not err in awarding summary judgment to Molina on the ADEA retaliation claim, because Ramos failed to show that any protected activity caused the termination of his employment.

IV.

For these reasons, we affirm the district court's judgment.

AFFIRMED

---

[4] We note that this lack of causation evidence is fatal to Ramos' claim regardless whether the adverse employment action in this case is construed as Brewer's reassignment of Ramos' team or as Brewer's ultimate termination of Ramos' employment.