**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1358

MICHAEL E. WELLS,

                    Plaintiff - Appellant,

          v.

ROBERT M. GATES, Secretary of Defense,

                    Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  Roger W. Titus, District Judge.  (8:07-cv-00619-RWT)

Argued:  March 26, 2009                    Decided:  July 10, 2009

Before MOTZ and AGEE, Circuit Judges, and Thomas D. SCHROEDER, United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Lenore Cooper Garon, GEBHARDT & ASSOCIATES, LLP, Washington, D.C., for Appellant.  Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Myrrel C. Hendricks, GEBHARDT & ASSOCIATES, LLP, Washington, D.C., for Appellant.  Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael E. Wells appeals the district court's grant of summary judgment in favor of the Department of Defense ("DOD") on his claims of retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and hostile work environment, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-34 ("ADEA"). For the reasons explained below, we affirm.

I.

Wells was an Industrial Security Specialist with the DOD's Defense Security Service ("DSS") for almost sixteen and one-half years, until his retirement in 2008. In that position, he performed various national security management functions, such as inspecting defense contractor facilities and operations for compliance with federal regulations on the handling of classified documents. Wells was born on February 20, 1948, putting him at age fifty-seven during most of the conduct relevant to his claims.

From 2001 through 2008, Wells' supervisor was Field Office Chief Horace Bearzi. By all accounts, Wells and Bearzi had what can best be described as a less than cordial working relationship. Although Wells and Bearzi had been at loggerheads

2

for years, the conduct giving rise to Wells' claims began in early 2005. Starting in March 2005, Bearzi repeatedly ordered Wells to stop using the modifier "Senior" with respect to his title "Industrial Security Specialist" on the grounds that it was no longer an officially recognized position. Wells failed to comply. On August 8, 2005, after receiving the approval of his supervisor, representatives of the DSS Office of Human Resources and Office of General Counsel, and upper management, Bearzi issued a Letter of Reprimand ("LOR") to address Wells' continued use of the nonexistent title and his signing of official letters requiring Bearzi's signature. On August 31, 2005, Bearzi conducted Wells' mid-year performance review and noted that he had nine "seriously overdue" security assessment reports, including some that were 120 days late, even though such reports were to be completed within thirty days of the inspection.

On September 1, 2005, Bearzi issued Wells a Letter of Instruction ("LOI"), again with the concurrence of his supervisor, representatives of the Office of Human Resources and Office of General Counsel, and upper management. In the LOI, Bearzi specifically identified the overdue reports and cited Wells for improperly storing national security files at home. To improve Wells' performance and ensure national security, Bearzi (1) required Wells to return the files and forbade him

3

from routinely retaining files at home; (2) prohibited him from writing reports, scheduling activities, or performing any other duties at home; (3) revoked his authority to park a government-owned vehicle at home; (4) instructed Wells to brief Bearzi at the beginning of each day as to his planned activities and at the end of each day as to his accomplished activities; and (5) withdrew approval of Wells' compressed work schedule. On that same day, Wells requested annual leave for the following three weeks, which Bearzi approved.

The next day, September 2, 2005, Wells contacted a counselor of the DSS Office of Diversity Management – its Office of Equal Employment Opportunity ("EEO"). On September 21, he went out on sick leave, and approximately two weeks later he canceled other previously scheduled leave (for an annual hunting trip) because, he said, a check-up revealed potentially serious health issues. He filed a formal EEO complaint on September 30, 2005, alleging that the LOR and LOI were retaliatory and claiming that he was subject to a hostile work environment.[1]

When his annual leave was about to expire, Wells requested additional sick leave through December 2, 2005. He based his

---

[1] The EEO summarily rejected the retaliation claim because Wells had not participated in prior protected conduct and, after a lengthy investigation, denied the hostile work environment claim as well.

4

back-to-back requests on vague references to "[p]hysician imposed medical leave" and cryptic doctor's notes referring to his "hypertension, diabetes, hypercholesterolemia, [and] obesity." (J.A. 182, 184-87, 191-92.) Bearzi approved each of the requests. Though allegedly unable to work, however, Wells was healthy enough to testify at length on behalf of a co-worker at both an EEOC deposition and a hearing and appeared unannounced for a departmental meeting at work during which, according to Bearzi, he said he was "feeling fine." These developments contributed to Bearzi's growing suspicions that Wells was malingering.

When Wells requested yet again that his sick leave be extended, this time beyond December 13, 2005,[2] and through January 20, 2006, Bearzi consulted the Office of Human Resources and Office of General Counsel. Based on their advice, he asked Wells to provide further documentation by December 20, 2005, to substantiate his medical condition. Bearzi noted that Wells had already missed seventy-two calendar days of work, had not submitted adequate medical documentation, and had reported unbidden to work-related activities on three separate occasions.

_____

[2] Wells requested annual leave from December 5, 2005, through December 13, 2005, which was approved by Bearzi. Wells claimed that this annual leave was for medical reasons.

Bearzi cautioned Wells that he could grant no further sick leave without the requested documentation.

Even though Bearzi reminded Wells of the looming deadline through e-mails and a telephone call, Wells failed to provide any documentation. Accordingly, by letter of December 22, 2005, Bearzi denied Wells any further sick leave.

On December 30, 2005, Wells belatedly submitted further medical documentation and requested sick leave from December 29, 2005, to January 31, 2006. Unfortunately, Wells' doctor's note stated only that he "[h]as been ill and unable to work from 12/29/05 to 1/31/06." (J.A. 212.) Based on the advice of the Office of Human Resources and Office of General Counsel, Bearzi again denied the sick leave request and asked for further medical documentation. On January 27, 2006, Wells submitted a doctor's note indicating that he was suffering from intestinal bleeding, which Bearzi relied on to grant sick leave as of February 1, 2006.

On January 24, 2006, Wells again contacted an EEO counselor. He filed a formal complaint on March 14, 2006, alleging that he suffered disparate treatment, retaliation, and a hostile work environment. After an extensive investigation, the EEO concluded that Bearzi's request for further medical documentation and denial of sick leave were not related to Wells' age or any protected conduct.

6

After more than ten months of continuous leave, dating back to early September 2005, Wells returned to work in July 2006.

Wells filed the present case on March 12, 2007. His complaint alleges that the DOD violated the ADEA and Title VII when, based on his age and in retaliation for his prior protected EEO activities, it subjected him to (1) retaliation and disparate treatment; (2) a hostile work environment; and (3) adverse personnel actions. In lieu of answering, the Government moved to dismiss, or in the alternative, for summary judgment. Following several months of briefing and a hearing, the district court considered all matters of record, including several hundred pages of the extensive EEO files, denied Wells' request for additional discovery on the grounds he failed to articulate any specific need, and granted the Government summary judgment on all claims.

Wells timely brings this appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.


II.

Wells challenges the district court's grant of summary judgment on his claims for retaliation and hostile work

environment.[3]  We review the grant of summary judgment de novo, "viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party."  Baqir v. Principi, 434 F.3d 733, 742 (4th Cir. 2006).  Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## A.

We address first Wells' retaliation claim.[4]  In the absence of direct evidence, we analyze a Title VII retaliation claim under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004).  To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected conduct; (2) his employer took

---

[3] The district court held that the disparate treatment claim lacked merit because Wells was not subjected to an adverse employment action and offered no specific evidence that similarly situated employees had received better treatment. Wells waives this claim on appeal inasmuch as he only mentions the term "disparate treatment" in the statement of the issues in his initial brief and never follows up with any argument. Fed. R. App. P. 28(a)(9)(A) (requiring the argument section of an opening brief to contain the "appellant's contentions and the reasons for them"); see Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

[4] The Government does not dispute, and we therefore assume, that a federal employee may pursue a retaliation claim under Title VII.  Baqir, 434 F.3d at 747 n.16.

8

an adverse employment action against him; and (3) the protected conduct was causally connected to the adverse action. <u>Ziskie v. Mineta</u>, 547 F.3d 220, 229 (4th Cir. 2008).  To satisfy the second element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).[5]  If the plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate a legitimate non-retaliatory reason for the adverse employment action. <u>Baqir</u>, 434 F.3d at 747.  If the employer does so, the plaintiff must prove that this reason was a pretext for retaliation. <u>Id.</u>

---

[5] The Government objected in the district court to the application of the <u>Burlington Northern</u> standard to a Title VII retaliation case involving a federal employee.  Although this court has applied this standard to federal employees in several unreported cases, <u>e.g.</u>, <u>Caldwell v. Johnson</u>, 289 F. App'x 579, 591 n.13, 592 (4th Cir. 2008) (citing cases), the issue has not been reached in a reported case. <u>Ziskie</u>, 547 F.3d at 229. Because the Government has not renewed its objection on appeal, we assume that the <u>Burlington Northern</u> standard applies for purposes of this appeal.

1.

Wells claims he created a genuine issue of material fact as to the second element of the prima facie case.[6] Although his briefing is less than clear, he appears to argue that he suffered materially adverse employment actions when Bearzi (a) requested further documentation of his medical condition, (b) refused to lift his LOI restrictions, and (c) denied a portion of his requested sick leave.

a.

Wells contends that Bearzi's December 6, 2005, letter requesting further medical documentation constituted a materially adverse employment action. The district court held that this request was not a materially adverse employment action because it would not have dissuaded a reasonable employee from filing an EEO complaint. The district court also noted that Wells, in fact, was not inhibited and subsequently filed another EEO complaint.

A materially adverse employment action is one that "well might have dissuaded a reasonable worker" from engaging in protected conduct. Burlington N., 548 U.S. at 68 (internal quotation marks and citation omitted). An employer's action is not materially adverse, however, if it amounts to "petty slights

_____

[6] For purposes of this appeal, we assume that Wells has met the first and third elements of the prima facie case.

or minor annoyances that often take place at work and that all employees experience."[7]  Id. at 68.  To make that assessment, we look to the context of the claimed actions.  Id. at 69.

We agree with the district court that Bearzi's request for further medical documentation was not a materially adverse employment action.  Bearzi's letter simply advised Wells to obtain appropriate medical documentation from his physician before any additional medical leave could be approved.  Standing alone, this request did not impose any disciplinary action on Wells or otherwise have a tangible employment consequence. Chaple v. Johnson, 453 F. Supp. 2d 63, 72-73 (D.D.C. 2006) (holding that "speculation of a future bad act" does not support a Title VII retaliation claim).  Such a request would not dissuade a reasonable worker from participating in protected conduct.  Moreover, the mere fact that Wells participated in the protected conduct of testifying at EEOC proceedings and filing an EEO complaint does not immunize him from a reasonable request by his employer.

b.

Wells claims next that he suffered a materially adverse employment action when Bearzi refused to lift the restrictions

---

[7] This anti-retaliation provision "protects an individual . . . from retaliation that produces an injury or harm." Burlington N., 548 U.S. at 67.

previously imposed in the LOI. Wells concedes that the initial imposition of these restrictions predated his participation in protected conduct and could not serve as the basis of a Title VII retaliation claim. He claims, however, that he eventually satisfied the terms of the LOI yet the restrictions remained in place until he retired two years later.

The record reflects that Bearzi imposed the LOI restrictions to enable Wells to finish significantly overdue work, prohibit him from storing national security files at home, and ensure that he completed his assignments on time. Nothing in the LOI indicates that Bearzi would lift the restrictions when the overdue reports were completed or after a fixed period of time, such as the end of the fiscal year, as Wells argues. Bearzi instead stated that he intended to lift the LOI when Wells cleared his backlog and remained current. Wells concedes that his reports were unfinished when he returned from sick leave and identifies nothing in the record indicating that he ever completed them. Thus, the district court correctly concluded that Bearzi's refusal to lift these restrictions did not constitute a materially adverse employment action.

c.

Wells next argues that Bearzi's denial of his request for sick leave from December 13, 2005, through January 31, 2006, constituted a materially adverse employment action. Although

the district court acknowledged that Wells raised the denial of sick leave as a retaliatory act, it concluded, without specifically addressing the argument, that no materially adverse employment action existed.

Wells claims that he was entitled to the grant of sick leave for this six-week period. He asserts that he initially provided sufficient documentation on December 5, 2005, pointing to an e-mail, leave request form, and doctor's note, which Bearzi denied. Wells also argues that he provided further documentation in his sick leave request of December 30, 2005, which Bearzi likewise denied. This six-week period included the Christmas holidays and ultimately resulted in the loss of more than $8,000 in gross income, which Wells otherwise would have been entitled to receive as compensation. The Government argues that the denial was not a materially adverse employment action because it did not dissuade Wells from participating in protected conduct after some of the alleged retaliatory acts.

In Burlington Northern, the Court held that the anti-retaliation provision "protects an individual . . . from retaliation that produces an injury or harm." 548 U.S. at 67. Loss of compensation could qualify as such an injury or harm. Id. at 73. Although "the fact that an employee continues to be undeterred in his or her pursuit of a remedy . . . may shed light as to whether the actions are sufficiently material and

13

adverse to be actionable," Somoza v. Univ. of Denver, 513 F.3d 1206, 1214 (10th Cir. 2008), the court ultimately must apply an objective standard. Burlington N., 548 U.S. at 68, 69; Steele v. Schafer, 535 F.3d 689, 696 (D.C. Cir. 2008) (stating that the "materially adverse" standard does not require consideration of the employee's "asserted imperviousness to acts of retaliation").

Based on the financial impact, we cannot say that a reasonable worker would not be dissuaded from engaging in protected conduct by the loss of this compensation from denial of sick leave. Burlington N., 548 U.S. at 73. To this extent, we disagree with the conclusion of the district court. For the reasons that follow, however, it is not dispositive, and we agree with the district court's ultimate decision.

2.

We find that the Government has demonstrated a legitimate, non-retaliatory reason for Bearzi's actions. An employer may enforce generally applicable employment policies against its employees without creating a cause of action for retaliation. Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 719, 728-29 (6th Cir. 2008); Hervey v. County of Koochiching, 527 F.3d 711, 725 (8th Cir. 2008); McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008); Gates v. Caterpillar, Inc., 513 F.3d 680, 686-87 (7th Cir. 2008); Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir.

14

2006); see also Valles-Hall v. Ctr. for Nonprofit Advancement, 481 F. Supp. 2d 118, 155 (D.D.C. 2007) (denying Title VII retaliation claim where employee failed to provide further medical documentation to support a sick leave request in accordance with company policy); Chaple, 453 F. Supp. 2d at 72-73 (same).

At times pertinent here, the generally applicable regulation on sick leave documentation was codified at 5 C.F.R. § 630.403 (2005).[8] That provision allows an agency to "grant sick leave only when supported by administratively acceptable evidence." 5 C.F.R. § 630.403(a). Although an agency "may consider an employee's certification . . . as administratively acceptable evidence," the agency "may also require a medical certificate or other administratively acceptable evidence as to the reason for an absence" that exceeds three working days. Id.

Bearzi complied with the generally applicable regulations governing sick leave requests. Upon the advice of the Office of Human Resources and the Office of General Counsel, Bearzi

---

[8] Bearzi's December 6, 2005, letter referred to 5 C.F.R., part 339, as the basis for his request for further medical documentation. Those regulations more specifically concern an individual's medical qualifications and physical well-being. E.g., 5 C.F.R. § 339.301(b) (authorizing agencies to require a medical examination for positions that have "medical standards or physical requirements"). It is apparent, however, that Bearzi's error was inadvertent, and his request for additional documentation was well-founded on this record for the reasons infra.

15

requested further medical documentation from Wells in the December 6, 2005, letter. Bearzi directed Wells to have his physician complete the attached Form WH-380 to verify his medical condition and its impact on his ability to perform the essential duties of his position. Bearzi requested this documentation by December 20, 2005. He also reminded Wells several times to comply with the request. Yet by December 21, Wells had neither submitted the requested information nor provided the form to his physician. Only after this did Bearzi deny further leave. Accordingly, when viewing the facts in the light most favorable to Wells, it is apparent that the district court properly held that the Government established a legitimate, non-discriminatory basis for Bearzi's actions.

3.

Wells argues that Bearzi's basis for denying sick leave was merely pretextual. This is demonstrated, Wells claims, by Bearzi's refusal to grant sick leave even after the requested medical documentation was provided. The problem with Wells' argument is that he did not provide his e-mail, leave request form, and doctor's note, until December 30, 2005. This was ten days after the stated deadline and eight days after the denial of his sick leave request. Moreover, Wells failed to submit the

16

documentation on Form WH-380, as required,[9] or to demonstrate that he provided all of the information requested by Bearzi.

Wells next argues that Bearzi's ultimate approval of his sick leave as of February 1, 2006, demonstrates that the prior denial was pretextual.[10]  Although Wells claims that he did not provide any different medical documentation in the approved sick leave request of January 27, 2006, than he had in the previous denied requests, Bearzi stated that the approved request included a doctor's note indicating that Wells was suffering from intestinal bleeding.  The record does not contain the leave requests in question, foreclosing any comparison of the documentation.  Thus, Wells has not shown that Bearzi knew of

---

[9]  Wells argues that Form WH-380 was inapplicable to his situation.  Although the instructions to Form WH-380 indicate that it is "optional" and is used for requests under the Family and Medical Leave Act, nothing in the record indicates that it could not be used to solicit information for sick leave requests as well.  Indeed, the record indicates that DOD agencies, such as the DSS, commonly use Form WH-380 to request information about an employee's medical condition.  Any suggestion of pretext is further dispelled by the fact that Bearzi's request that Wells use Form WH-380 was made upon the advice of the Office of Human Resources.

[10]  On a related note, Wells claims that Bearzi's change of his status from "absent without leave" ("AWOL") to "leave without pay" ("LWOP") demonstrates pretext.  Wells states that this alteration implies that Bearzi could not justify AWOL status.  However, Wells fails to explain how the initial AWOL status was unjustified or to identify how the change of his classification to a more favorable status could be evidence of pretext.

17

the extent of the medical condition prior to the end of January or that the prior sick leave requests contained adequate medical documentation.

In addition, the record contains no evidence that Bearzi failed to apply the generally applicable regulation to request further medical documentation from similarly situated employees who had requested extended sick leave. To the contrary, Bearzi had previously required another employee to provide further medical documentation to support a sick leave request. For these reasons, we conclude that Wells failed to demonstrate evidence of pretext, and the district court properly granted summary judgment on Wells' retaliation claim.

## B.

We now turn to Wells' claim that he was subjected to a hostile work environment based on his age, in violation of the ADEA,[11] and in retaliation for his protected conduct, in violation of Title VII. The district court held that the hostile work environment claim lacked merit because Wells offered no evidence that the alleged harassment was based on his

---

[11] The Government does not dispute that Wells may bring a hostile work environment claim under the ADEA. "[W]e have previously assumed, without deciding, that a hostile work environment claim is generally cognizable under the ADEA for plaintiffs age forty or older." Baqir, 434 F.3d at 746 n.14 (citing Burns v. AAF-McQuay, Inc., 166 F.3d 292, 294 (4th Cir. 1999); Causey v. Balog, 162 F.3d 795, 801 n.2 (4th Cir. 1998)).

age or that it was severe or pervasive.  We address each basis - age and retaliation - separately.

1.

To make out a hostile work environment claim under the ADEA, a plaintiff must adduce evidence that "(1) he experienced unwelcome harassment; (2) the harassment was based on his . . . age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."  Baqir, 434 F.3d at 745-46 (citing Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

Wells grounds his age-based harassment claim on the following actions:  Bearzi's instruction not to use the title "Senior Industrial Security Specialist;" issuance of an LOR charging "blatant insubordination;" imposition of the LOI restrictions; and posting on a bulletin board in a Human Resources employee's office that Wells had filed a grievance regarding those restrictions.[12]  Wells argues that Bearzi did not impose such restrictions on similarly situated employees who

---

[12] Although Wells also argues that the denial of his sick leave contributed to the hostile work environment, he claims that it was retaliatory and not based on age.

19

were not over the age of forty and, thus, not within the protected class under the ADEA.

We find that, no matter how these actions are viewed, Wells' claim fails because he never demonstrates a genuine issue of material fact that age was a factor in the alleged harassment. "[C]onclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment." Causey, 162 F.3d at 802. Wells never alleges, nor is there any evidence, that Bearzi made any age-related comments. Wells also fails to identify any evidence that Bearzi accorded different treatment to similarly situated employees who were not within the protected class. Although Wells claims that he presented evidence that younger co-workers were allowed to use the "Senior Industrial Security Specialist" title and were not subject to the same restrictions, nothing in the record identifies even one co-worker under Bearzi's supervision who was under the age of forty, employed as an Industrial Security Specialist at pay grade GS-12, guilty of delinquent reports even remotely as overdue, and involved in as many episodes of insubordination. Thus, the district court properly granted summary judgment on Wells' hostile work environment claim based on age.

20

To make out a hostile work environment claim based on retaliation under Title VII, a plaintiff must show that "(1) he experienced unwelcome harassment; (2) the harassment was . . . [in retaliation for protected conduct]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Baqir, 434 F.3d at 745-46 (citing Bass, 324 F.3d at 765); see Von Gunten v. Maryland, 243 F.3d 858, 869-70 (4th Cir. 2001), overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

Wells alleges that he was subjected to unwelcome harassment in retaliation for his protected conduct. He points again to Bearzi's denial of the requested sick leave and refusal to lift the LOI restrictions.[13]

Even if this alleged unwelcome harassment could be said to have been in retaliation for protected conduct, Wells fails to show that it was severe or pervasive. To meet this third element of the prima facie case, the harassment must be severe

---

[13] The Government argues that the imposition of the LOR and LOI restrictions were not retaliatory actions for purposes of the hostile work environment claim. Although Wells alleges other unwelcome harassment based on his age, he relies on the LOR and LOI only to the extent of Bearzi's refusal to lift the restrictions after Wells returned from sick leave.

or pervasive enough to create a subjectively and objectively hostile or abusive work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993); Von Gunten, 243 F.3d at 870. We examine all of the circumstances to determine whether the work environment was objectively hostile. These circumstances "may include the frequency of the . . . [retaliatory] conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. The harassment must be extreme. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Wells may have subjectively perceived his work environment to be hostile, but he fails to demonstrate that the alleged harassment was objectively hostile and abusive. Bearzi denied Wells' sick leave request under the generally applicable regulations governing such requests and, in doing so, relied on the advice of the Office of Human Resources and the Office of General Counsel to request further medical documentation. Bearzi also reminded Wells many times to provide the information. When Wells failed to comply by the deadline and subsequently refused to do so, Bearzi again relied on the advice of the Office of Human Resources and the Office of General Counsel to deny the sick leave request. Thus, the denial was

the direct result of Wells' inaction and did not reflect an objectively hostile atmosphere.

Wells also fails to show that the refusal to lift the LOI restrictions was objectively hostile and abusive. Federal courts "do[] not sit as a kind of super-personnel department weighing the prudence of employment decisions made by [employers] charged with employment discrimination." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998). Bearzi imposed the restrictions to enable Wells to catch up with seriously overdue work, prohibit him from storing national security files at home, and ensure that he completed his assignments on time. The record contains no evidence that these deficiencies were ever remedied. Based on Wells' documented shortcomings, the refusal to lift the LOI restrictions did not "unreasonably interfere" with his work performance. Accordingly, the district court properly granted summary judgment on Wells' hostile work environment claim based on retaliation.

III.

Wells argues finally that the district court prematurely granted summary judgment before allowing him the opportunity to conduct discovery. We review the district court's refusal to allow discovery prior to the entry of summary judgment for abuse

23

of discretion. Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002). We will not reverse the district court "unless there is a clear abuse of discretion or[] unless there is a real possibility the party was prejudiced by the denial of the extension." Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (citation omitted).

Federal Rule of Civil Procedure 56(f) authorizes a court to refuse summary judgment "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986). To avail itself of this relief, the nonmoving party must set forth specific reasons for discovery in an affidavit, Fed. R. Civ. P. 56(f), and "may not simply assert in its brief that discovery was necessary." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) (internal quotation marks and citation omitted). Although "the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate," Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (internal quotation marks and citation omitted), a Rule 56(f) affidavit may not be necessary under certain circumstances. Harrods, 302 F.3d at 244-45.

Wells concedes that he never filed a Rule 56(f) motion and affidavit. The record also contains no evidence that he raised

24

the need for additional discovery in his brief in opposition to the Government's summary judgment motion. And although Wells attached a witness list to his brief, his list fails to articulate what additional facts would be gained through discovery or how those facts would enable him to survive summary judgment. To the contrary, it merely contains vague assertions as to the listed individuals' relevance. Thus, we cannot say that the district court abused its discretion in refusing to allow discovery prior to entering summary judgment for the Government.

IV.

For the foregoing reasons, we conclude that Wells failed to create a genuine issue of material fact that he suffered retaliatory or hostile work environment discrimination. Nor does he show that the district court abused its discretion in refusing to allow him discovery prior to the entry of summary judgment. Accordingly, we affirm the district court's grant of summary judgment.

<u>AFFIRMED</u>

25