PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1038

ROBIN L. WALKER,

Plaintiff - Appellant,

v.

MOD-U-KRAF HOMES, LLC,

Defendant - Appellee.

------------------------------------

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Amicus Supporting Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.   Glen E. Conrad, Chief District Judge.  (7:12-cv-00470-GEC)

Argued:  October 28, 2014         Decided:  December 23, 2014

Before NIEMEYER, DUNCAN, and AGEE, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Agee wrote the opinion, in which Judge Niemeyer and Judge Duncan concurred.

**ARGUED**: Terry Neill Grimes, TERRY N. GRIMES, ESQ., P.C., Roanoke, Virginia, for Appellant.  James J. O'Keeffe, IV, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellee. Elizabeth Ellen Theran, U.S. EQUAL EMPLOYMENT OPPORTUNITY

COMMISSION, Washington, D.C., for Amicus Supporting Appellant. **ON BRIEF**: P. David Lopez, General Counsel, Carolyn L. Wheeler, Acting Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Supporting Appellant.

AGEE, Circuit Judge:

Robin Lynn Walker appeals the district court's grant of summary judgment to her former employer, Mod-U-Kraf Homes, LLC ("Mod-U-Kraf Homes"), on her claims of a sexually hostile work environment and retaliation. For the reasons set forth below, we vacate the judgment of the district court on the hostile work environment claim and remand for further proceedings as to it. We affirm the grant of summary judgment on the retaliation claim.

I.

Based in Rocky Mount, Virginia, Mod-U-Kraf Homes manufactures pre-fabricated houses.[1] Walker worked there during two time periods: from 2007 to 2009 and again from May 2010 to July 22, 2011. Walker worked several positions in the final finishing department, though she primarily "caulk[ed] and paint[ed] trim inside each house or 'box' as it neared the end of the production line." Walker v. Mod-U-Kraf Homes, Inc., 988 F. Supp. 2d 589 (W.D. Va. 2013). Because of changes to her specific assignments during each term of her employment,

_____

[1] Consistent with the governing standard at the summary judgment stage, the facts are recounted in the light most favorable to Walker even where there are disputed events that Walker may not ultimately be able to prove. See FDIC v. Cashion, 720 F.3d 169, 173 (4th Cir. 2013).

3

Walker's allegations primarily arise from the second term (after May 2010).

Walker claims that one of her co-workers, David Mullins, made inappropriate sex-based comments to her and other co-workers on a near-daily basis. When Walker first started working at Mod-U-Kraf Homes, Mullins referred to her as "fresh meat." (J.A. 415.) Two or three times a week, Mullins would grab his crotch and say, "these nuts are looking for you." (J.A. 447–48.) With the same frequency, he would call out, "[t]here she goes, there it is." (J.A. 240.) Mullins would stick his tongue out at Walker and other female employees and "snicker." (J.A. 417–18.) Other times, he would grab his crotch and exclaim, "oh, oh, oh" or say, "I bet you could holler real loud, couldn't you." (J.A. 559, 117.) After Walker began dating a co-worker, Ray Cassidy, in March 2011, Mullins also made comments to him within Walker's hearing about Walker performing oral sex. For example, one day when Walker went into a box to work, Mullins suggested to Cassidy that if he "want[ed] a blow job" he should go join her. (J.A. 507.)

Mullins was not alone in his conduct. Walker claims that in the spring of 2011 another co-worker, James Young, also began grabbing his crotch and saying, "these nuts are looking for you" almost every day. (J.A. 453–57, 609.)

4

Other co-workers frequently witnessed these incidents and were, in turn, subject to similar statements. (E.g., 453, 507, 602, 609.) And on at least two occasions, Mullins approached a co-worker (once Cassidy, once a female co-worker), grabbed his crotch, looked down to where the co-worker was working, and said, "[w]hile you're down there why don't you just . . . ." (J.A. 601-03.)

Following the procedure she had been advised to use, Walker complained about and reported these incidents to her "lead" co-worker, Sandra Burnopp.[2] Even though Walker complained "every week," Burnopp's response was always the same. (J.A. 449.) She told Walker to "just ignore it," that if she ignored it they might stop, and that "[h]e does that to everybody" and "always acts like that." (J.A. 416, 419, 449, 459, 509.) Burnopp never spoke to Mullins or Young about their behavior, nor did she report Walker's complaints to a supervisor. Frustrated by Burnopp's response, Walker began complaining to her supervisor, Wayne Craiger, every week as well. When Craiger spoke to Mullins, Mullins reduced the frequency of his comments for a while, though this had negligible long-term impact.

---

[2] The "lead" was the "lead person of the employees on that end of the [production] line." (J.A. 417.) It is unclear from the record what level of supervisory authority, if any, is held by a "lead."

Walker claims that she was under such stress as a result of this work environment that she sought and received a prescription for Xanax from her doctor. She also began to work slower in order to "stay[] behind," and actively tried to avoid Mullins and Young. (J.A. 522-23.)

On July 20, 2011, employees were breaking for lunch when Mullins turned toward Walker and Cassidy and "kept saying, [w]iener in the mouth, wiener in the mouth." (J.A. 472.) Walker and Cassidy broke away from the group to eat, and decided to telephone Burnopp to arrange to meet with her and Craiger after lunch "because this stuff with David Mullins is going to stop today." (J.A. 476.) Walker and Cassidy encountered Mullins shortly thereafter, observing him looking at them and laughing. They confronted him immediately. Though Walker denies touching Mullins, numerous employees described her as "poking" or "punching" her fingers into Mullins' chest. Cassidy, meanwhile, stood behind Walker holding a hammer in a threatening manner that raised concern amongst witnesses. Burnopp and Craiger arrived on scene and broke up the altercation. (For simplicity, this incident will be referred to as the July 20 "altercation.")

Craiger and plant manager Ricky Adkins began questioning the participants and witnesses to determine what had occurred. Cassidy informed them that if he was going to be fired, they

6

should do so then, at which point Walker indicated that if Cassidy was being fired, then she was quitting. Adkins suspended Cassidy for three days pending further investigation, and told Walker to return to work.

Craiger and Adkins interviewed or obtained statements from at least ten employees. Although the accounts varied in some particulars, the witnesses (except for Walker and Cassidy) uniformly described Walker and Cassidy as the initiators and aggressors in the July 20 altercation.

Walker's written statement regarding the altercation focused on Mullins' past behavior. She accused Mullins of "say[ing] stuff like '[t]here she goes, there it is' – 2 or 3 times a week," and of having said on one occasion, "if you want a blow job go up in that Box [with Walker.]" (J.A. 240.) She said that shortly before the altercation, Mullins "kept saying, 'weener [sic] in the mouth' over and over, laughing," and that she told Cassidy she was "tired of [Mullins'] mouth." (J.A. 240.) Walker's only comment about the altercation itself was that an "[a]rgument insued [sic]." (J.A. 240.)

On July 21, Adkins spoke with human resources representative Kathryn McDaniel and together they concluded that Walker had also participated in the altercation and laid hands on Mullins. They determined that both Cassidy and Walker should be terminated as a result of the altercation and notified

7

Cassidy of the decision that day. Adkins intended to inform Walker of her termination of employment in person, but he was delayed until the following Monday, July 25, because Walker called in sick for several days.

In subsequent weeks Walker called the telephone numbers listed in Mod-U-Kraf Homes' employee handbook for reporting harassment to the managerial or corporate level. She told them of Mullins' harassment and complained that she had been fired for the "wrong reasons." (J.A. 444.) In mid-August, Mod-U-Kraf Homes issued a written disciplinary report to Mullins, stating that "complaints were made against [him] during an investigation and [were] not reported until later." (J.A. 356.) Mullins was instructed "not to make any comments to other employees," citing the company's "anti-harassment policy." (J.A. 356.)

In October 2012, Walker filed a complaint, subsequently amended, in the Western District of Virginia against Mod-U-Kraf Homes. She alleged that she was subjected to a hostile work environment in the form of sexual harassment. Following discovery, Mod-U-Kraf Homes moved for summary judgment, which the district court granted.

The court held that Walker's evidence of objectively severe or pervasive conduct was "insufficient, as a matter of law, to meet the high bar required to survive summary judgment on a hostile work environment claim." 988 F. Supp. 2d at 597.

8

Although Walker's complaint did not formally plead a claim of retaliation, by the time Mod-U-Kraf Homes moved for summary judgment, the parties briefed the issue as if she had. The district court granted summary judgment as to this claim, concluding Walker's evidence failed to create a genuine issue of material fact that the "legitimate, nonretaliatory reason for terminating her employment, namely, her involvement in the fight with David Mullins," was pretext for retaliation. Id. at 596 n.2, 601.

Walker noted a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Cashion, 720 F.3d at 173. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition to construing the evidence in the light most favorable to Walker, the non-movant, we also draw all reasonable inferences in her favor. Cashion, 720 F.3d at 173.

9

A.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against individuals "[w]ith respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2. "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." EEOC v. R&R Ventures, 244 F.3d 334, 338 (4th Cir. 2001). A hostile work environment is one "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). However, Title VII does not "attempt to purge the workplace of vulgarity" and "[n]ot all sexual harassment that is directed at an individual because of his or her sex is actionable." Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996) (citation and internal quotation marks omitted).

Walker's complaint alleged that Mod-U-Kraf Homes violated Title VII by "failing to take action reasonably calculated to prevent sexual harassment and by permitting a work environment to exist that was sexually charged and hostile and offensive to" Walker and other workers. (J.A. 9.) To survive summary

10

judgment, Walker was required to produce evidence sufficient for a reasonable juror to conclude that the offending behavior was (1) unwelcome, (2) based on her gender, (3) "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere," and (4) imputable to Mod-U-Kraf Homes. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009) (citing EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 313-14 (4th Cir. 2008)). Mod-U-Kraf Homes argued summary judgment should be granted in its favor because the conduct Walker complained of did not satisfy the second or third components of a hostile work environment claim. The district court only analyzed whether Walker satisfied the third component and concluded she had failed to do so. 988 F. Supp. 2d at 597 n.3.

This third prong of a hostile work environment claim has "both subjective and objective components." Cent. Wholesalers, Inc., 573 F.3d at 175. A plaintiff like Walker was required to show that she perceived—and that a reasonable person would perceive—the environment to be abusive or hostile. See id. The district court accepted that Walker subjectively perceived her workplace to be offensive, but concluded that she had failed to produce evidence to satisfy the objective component of her claim. "'[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the

11

plaintiff's position, considering all the circumstances.'" Ziskie v. Mineta, 547 F.3d 220, 227 (4th Cir. 2008) (alteration in original) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).

Throughout its decision, the district court emphasized that it did not condone the "boorish," "moronic," "inappropriate," "immature," and "unprofessional" conduct Walker alleged had occurred. E.g., 988 F. Supp. 2d at 599, 601. Nonetheless, the court held that although "some of the comments made by Young and Mullins were clearly inappropriate, [Walker's] coworkers' behavior was simply not of the same magnitude as that which the Fourth Circuit has found sufficiently severe or pervasive to constitute actionable sexual harassment." Id. at 597. On this record, however, we conclude that the district court erred in stating that Mullins and Young's conduct could not constitute actionable "severe or pervasive" harassment as a matter of law. For that reason, we are constrained to vacate the judgment of the district court and remand for further proceedings on the hostile work environment claim.

Two overarching principles lead us to this conclusion. First, at the summary judgment stage, we must view the record in the light most favorable to Walker, who was the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Second, "whether 'harassment was sufficiently severe or

12

pervasive is quintessentially a question of fact.'" Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 773 (4th Cir. 1997) (quoting Paroline v. Unisys Corp., 879 F.2d 100, 105 (4th Cir. 1985)). Thus, while summary judgment is appropriate in cases where the facts are clearly insufficient to satisfy the standard, when there is a close question and "'reasonable minds could differ'" when weighing all the facts against the law, then summary judgment is inappropriate. Paroline, 879 F.2d at 105 (quoting Anderson, 477 U.S. at 250).

The totality of the record before us creates too close a question as to whether Mullins and Young's behavior created an objectively hostile or abusive work environment to be decided on summary judgment. See Oncale, 523 U.S. at 81 ("[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." (citation and internal quotation marks omitted)). As recounted above, that alleged environment consisted of comments of varying degrees of offensiveness being made to Walker several times a week for well over a year. Similar comments were made with the same frequency to other co-workers. See Hoyle v. Freightliner, LLC, 650 F.3d 321, 333 (4th Cir. 2011) ("[T]he totality of the circumstances includes conduct directed not at the plaintiff."). When Walker or her co-workers complained to their leads and immediate supervisors,

13

limited action was taken to stop the offending behavior. Whether this environment is sufficient to satisfy the objectively unreasonable "severe or pervasive" prong is not answered by a "mathematically precise test," but rests on a variety of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 22-23; see also Jennings v. Univ. of N.C., 482 F.3d 686, 696 (4th Cir. 2007) ("Whether gender-oriented harassment amounts to actionable (severe or pervasive) discrimination 'depends on a constellation of surrounding circumstances, expectations, and relationships.' All the circumstances are examined, including the positions and ages of the harasser and victim, whether the harassment was frequent, severe, humiliating, or physically threatening[.]" (citation omitted)).

To be sure, on this record, some factors pull toward a finding that the offensive behavior was actionable, while other factors pull in the opposite direction. But neither we nor the district court are called upon to weigh that evidence at this stage. Instead, the court's task is simply to examine whether the record contains proof from which a reasonable trier of fact could conclude "that the environment was pervaded with

14

discriminatory conduct aimed to humiliate, ridicule, or intimidate, thereby creating an abusive atmosphere." Cent. Wholesalers, Inc., 573 F.3d at 176 (citation and internal quotation marks omitted). We recognize that some of the above incidents and individuals' motives are disputed, but such factual details and credibility determinations are also not issues to be resolved at the summary judgment stage. For our purposes, it is sufficient that Walker's proffered evidence creates a genuine issue of fact as to whether her environment was sufficiently "severe or pervasive to alter the conditions of her employment." Cf. Id. at 175.

In reaching its decision, the district court quite appropriately examined our prior case law concerning what types of events survived summary judgment because they did—or at least could—constitute actionable sexual harassment. E.g., Ziskie, 547 F.3d at 228 (stating that in order to survive summary judgment, alleged claims "must still be objectively as severe as that in cases that we have allowed to go to a jury"). For example, the Court distinguished Walker's work environment from cases where the harasser touched the victim, propositioned or threatened her, or engaged in demonstrations of sexual acts. Walker, 988 F. Supp. 2d at 599. But, while our case law has noted instances where certain conduct would satisfy a plaintiff's burden on the "severe or pervasive" element, we have

15

not limited the applicable analysis only to instances where those precise behaviors are alleged to have occurred.

Indeed, we have previously recognized that harassment need not involve touching or be "physically threatening" in order to be actionable "e.g., where it is humiliating and demeaning." Hoyle, 650 F.3d at 334-35; see also Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (stating that a plaintiff "may prove sex-based discrimination in the workplace even though she is not subjected to sexual advances or propositions"). And in this case, a reasonable jury could rationally find that the consistent and repeated comments made by Mullins and Young "painted women in a sexually subservient and demeaning light [that is] sufficiently severe or pervasive to alter the conditions of [Walker's] employment and to create an abusive work environment." Ocheltree, 335 F.3d at 333. That there are also arguments that suggest that this conduct may not be sufficiently severe or pervasive does not mean that a reasonable jury could not conclude otherwise. At bottom, the facts presented in the record are simply too close to that line for summary judgment to be appropriate.

We caution that just because Walker has prevailed at this stage of the proceedings does not mean that she will ultimately prevail on her claim or even that her case will proceed to trial. In ruling on the summary judgment motion, the district

16

court only reviewed the third prong of Walker's claim. We expressly decline Mod-U-Kraf Homes' invitation to consider the "because of gender" factor in this appeal. That task is more appropriately performed in the first instance by the district court. And in reversing the district court's decision, we have—as we must—viewed the evidence in the light most favorable to Walker; what she may ultimately prove, and whether that evidence is ultimately persuasive to a trier of fact, is another matter. All we hold is that the evidence creates a genuine dispute of material fact, which does not permit the granting of summary judgment to Mod-U-Kraf Homes with respect to the third component of Walker's hostile work environment claim.

B.

Walker sought to establish her retaliation claim under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case, Walker had to show (1) that she engaged in a protected activity; (2) that Mod-U-Kraf Homes acted adversely against her; and (3) that the protected activity was a "but-for" cause of her termination and not simply a "motivating factor." See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc). If Walker established her prima facie case, the burden would shift to Mod-U-Kraf Homes to provide a

17

legitimate, non-retaliatory explanation for its decision to terminate Walker. See id. Upon such a proffer, the burden would return to Walker to show that the proffered reason was pretext for retaliation. See id.

The district court stated that even if it were assumed that Walker could establish a prima facie case, Mod-U-Kraf Homes had met its burden of putting forth "a legitimate, nonretaliatory reason for terminating her employment, namely, her involvement in the fight with David Mullins." Walker, 988 F. Supp. 2d at 601. The court explained that Walker's arguments attempting to establish pretext fell short of creating a genuine issue of material fact with respect to that issue. Id. at 601-03. Accordingly, it granted summary judgment.

Walker argues that in so doing, the district court overstepped its role and usurped that of the jury by weighing Mod-U-Kraf Homes' motives for terminating Walker. She contends that she demonstrated a triable issue regarding pretext for retaliation based on the following evidence: (1) the individuals who terminated her employment did so on the day after they learned she was being sexually harassed; (2) Mod-U-Kraf Homes failed to terminate Mullins, thus treating similarly situated individuals differently; (3) Mod-U-Kraf Homes listed Walker as being eligible for re-hire despite purporting to terminate her for cause; and (4) Mod-U-Kraf Homes failed to follow its sexual

18

harassment policies when Walker first reported she was being harassed.

We agree with the district court that Walker failed to satisfy her burden of producing evidence from which a reasonable jury could conclude that Mod-U-Kraf Homes' explanation was "unworthy of credence" or was a cover-up for unlawful discrimination. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). As an initial matter, Walker has offered no direct evidence that she was terminated because she reported sexual harassment in the workplace. Nor has she offered circumstantial evidence that would call into question Mod-U-Kraf Homes' explanation for her termination of employment.

Walker's argument as to the timing of her termination discounts that the decision to do so was made the day after the altercation that Mod-U-Kraf Homes says was the basis for her termination. The record reflects that Adkins and McDaniel learned of some of Walker's complaints about Mullins during the course of the investigation into the July 20 altercation. But proof that Walker complained about harassment as part of the investigation is insufficient to suggest pretext. E.g., Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989) ("[M]ere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial

19

evidence of legitimate reasons for discharging that employee."), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). And while Walker asserts Mod-U-Kraf Homes' investigation into the altercation was insufficient and its conclusion that she placed hands on Mullins was incorrect, neither argument provides evidence of pretext.

We have repeatedly observed that "[i]t is not [a court's] province to decide whether [an employer's] reason [for terminating an employee] was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the employee's] termination." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (citation and internal quotation marks omitted). Simply put, the circumstances and timing of Walker's termination do not support a reasonable inference of pretext in this case.[3]

Walker also suggests that a jury could find pretext based on Mod-U-Kraf Homes "treat[ing] Mullins and Walker, similarly-situated employees with respect to the incident, in a disparate manner[.]" (Opening Br. 55.) To be sure, evidence that an

---

[3] We acknowledge, of course, that timing can constitute evidence of pretext in an appropriate case. E.g., Dotson v. Pfizer, Inc., 558 F.3d 284, 297 (4th Cir. 2009) (discussing one such circumstance). But timing is unlikely to defeat a nonretaliatory explanation on its own, see Roberson v. Alltel Info. Servs., 373 F.3d 647, 656 (5th Cir. 2004), and it does not do so here.

employer treated similarly situated individuals differently can be evidence of pretext. E.g., Laing v. Fed. Express Corp., 703 F.3d 713, 721 (4th Cir. 2013) (stating that such comparator evidence "would be 'especially relevant' to a showing of pretext"). But when Mod-U-Kraf Homes decided to terminate Walker and not Mullins, it did not view Walker and Mullins as "similarly situated," nor is there evidence that their roles in the altercation were equal. Numerous witnesses stated that Walker physically assaulted Mullins, not the other way around. The undisputed record shows that Adkins and McDaniel decided Walker should be fired as a result of Walker's physical assault on a co-worker. Although Walker accused Mullins of inappropriate comments as part of her statement, none of the evidence indicated that Mullins had "laid hands on" Walker or another employee during the altercation. See King v. Rumsfeld, 328 F.3d 145, 151-52 (4th Cir. 2003) (rejecting plaintiff's attempt to demonstrate pretext based on employer's conduct toward another individual where plaintiff failed to produce evidence that the employer believed the two individuals were "similarly situated" or evidence from which that conclusion could be inferred). Moreover, Walker's argument ignores that Mod-U-Kraf Homes did treat the two individuals it had determined to be culpable for the altercation the same: it terminated both Walker and Cassidy for their physically aggressive roles in the

21

altercation.  Walker's reliance on Mod-U-Kraf Homes' treatment of "similarly situated" employees does not demonstrate pretext. To the contrary, the record on this point supports Mod-U-Kraf Homes' legitimate, nonretaliatory explanation for its decision.

Walker also contends that a jury could find pretext from Mod-U-Kraf Homes' indication on her personnel change notice that Walker's performance was "good" and that she was eligible for rehire.  Contrary to Walker's contention, however, no fatal contradiction exists between these statements.  Walker may have excelled at her job, and yet still been subject to termination for cause.  And she may have been subject to termination for cause, yet also still be eligible for rehire pursuant to Mod-U-Kraf Homes' policies.[4]  Neither designation contradicts Mod-U-Kraf Homes' proffered explanation, nor is it particularly probative of the motives for terminating Walker's employment. King, 328 F.3d at 151-52 (rejecting a plaintiff's allegations of pretext for these reasons); see also Reeves v. Sanderson Plumbing, Inc., 530 U.S. 133, 147 (2000) (stating that a plaintiff can prove pretext by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of

---

[4] Adkins stated in his deposition that Walker was terminated for fighting with Mullins, but that he did not remember if she was "eligible for rehire," and he did not dispute the notation in her paperwork that she was.  (J.A. 691.)

[retaliation]"); Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006) ("[T]he plaintiff cannot seek to expose [an employer's] rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it.").[5]

Lastly, Walker has not created a triable issue as to pretext based on Mod-U-Kraf Homes' failure to follow its written sexual harassment policies after she first reported being harassed. Walker relies on the alleged failure of the individuals to whom she reported being harassed to follow Mod-U-Kraf Homes' policies about investigating and reporting such complaints to their supervisors. And she accuses Adkins and McDaniel of failing to investigate her claims of sexual harassment once they learned of them. Even accepting, for the sake of argument, that these individuals violated Mod-U-Kraf Homes' policies, that is unrelated to the proffered legitimate reason to terminate Walker's employment. In other words,

---

[5] We further note that the termination documentation Walker relies on also states that her termination was "[i]nvoluntary" and that she was "terminated for conduct." (J.A. 347.) While these statements do not provide a detailed explanation for the reason Mod-U-Kraf Homes terminated Walker, both are consistent with Adkins and McDaniel's statements. Contrast EEOC v. Sears Roebuck & Co., 243 F.3d 846, 852-53 (4th Cir. 2001) (stating that an employer's inconsistent explanations and different justifications are probative of pretext).

failure to follow company policy to report or investigate her complaints does not call into question whether Mod-U-Kraf Homes terminated Walker's employment based on its conclusion that she had physically assaulted another employee. It is not evidence of pretext.

Accordingly, Walker has failed to produce evidence creating a triable issue as to whether Mod-U-Kraf Homes' proffered explanation for terminating Walker was pretext for retaliation. Accordingly, the district court did not err in granting summary judgment on this claim.

## III.

For the reasons explained above, we vacate the judgment of the district court granting summary judgment to Mod-U-Kraf Homes on Walker's hostile work environment claim and remand for further proceedings consistent with this opinion. We affirm the district court's judgment granting summary judgment to Mod-U-Kraf Homes on Walker's retaliation claim.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

24