**PUBLISHED**
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1854**

REBECCA GROVES; JONATHAN HADDEN,

             Plaintiffs - Appellants,

        v.

COMMUNICATION WORKERS OF AMERICA, Communication Workers of America District 3; COMMUNICATION WORKERS OF AMERICA, LOCAL 3702,

             Defendants – Appellees,

        and

AT&T MOBILITY LLC,

             Defendant.

Appeal from the United States District Court for the District of South Carolina, at Anderson.   Timothy M. Cain, District Judge. (8:12-cv-03329-TMC)

Argued:  October 27, 2015            Decided:  March 10, 2016

Before KEENAN, WYNN, and DIAZ, Circuit Judges.

Affirmed by published opinion.  Judge Diaz wrote the opinion, in which Judge Keenan and Judge Wynn joined.

**ARGUED**: Jeffrey Parker Dunlaevy, STEPHENSON & MURPHY, LLC, Greenville, South Carolina, for Appellants.  Tessa Addie-Lee Warren, QUINN, CONNOR, WEAVER, DAVIES & ROUCO, LLP, Decatur,

Georgia, for Appellees.  **ON BRIEF**: Nancy Jo Thomason, Anderson, South Carolina, for Appellees.

_____

DIAZ, Circuit Judge:

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, allows litigants to bring "[s]uits for violation of contracts between an employer and a labor organization" in federal district court. Usually, an employee who wants to sue his employer for a violation of a collective bargaining agreement must first exhaust the contractual remedies in that agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 652–53 (1965). "The reasoning behind this rule is simple. Federal labor law policy favors adjustment by the parties of disputes arising under a collective bargaining agreement." Amburgey v. Consolidation Coal Co., 923 F.2d 27, 29 (4th Cir. 1991).

However, in a so-called hybrid § 301 action, an employee may forego exhaustion by showing "both 1) that the union breached its duty of fair representation and 2) that his employer violated the collective bargaining agreement." Thompson v. Aluminum Co. of Am., 276 F.3d 651, 656 (4th Cir. 2002).* A union breaches its duty of fair representation "if its actions are either 'arbitrary, discriminatory, or in bad

---

* While the employee must satisfy both prongs, he need not sue both his employer and his union. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983) ("The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.").

faith.'" <u>Air Line Pilots Ass'n, Int'l v. O'Neill</u>, 499 U.S. 65, 67 (1991) (quoting <u>Vaca v. Sipes</u>, 386 U.S. 171, 190 (1967)).

Rebecca Groves and Jonathan Hadden (collectively, "Plaintiffs") sued their employer, AT&T Mobility ("AT&T"); their union, Communications Workers of America, District 3 ("CWA"); and CWA's local affiliate, Local 3702, under § 301. Plaintiffs alleged that AT&T breached their collective bargaining agreement by wrongfully terminating Plaintiffs' employment, and that CWA and Local 3702 breached their duty of fair representation by failing to inform Plaintiffs of a settlement offer for that termination. Plaintiffs and AT&T settled, and the district court granted CWA and Local 3702's motion for summary judgment. Because we find that Plaintiffs' allegations cannot form the basis of a hybrid § 301 suit, we affirm.

I.

A.

Plaintiffs began working for AT&T as retail sales consultants in Anderson, South Carolina, in December 2008. Both became members of CWA and Local 3702 (collectively, the "Union"). On March 27, 2010, CWA, as the exclusive bargaining representative for Plaintiffs, entered into a collective bargaining agreement with AT&T that was effective until February 7, 2014.

4

Article 7 of the agreement set out the required grievance procedure for allegations "that an employee has been discharged . . . or otherwise disciplined without just cause." J.A. 35. Any grievance not resolved or addressed "informally with the first level of [m]anagement" had to be submitted by the Union to AT&T in writing within forty-five days of "the action complained of." Id. The agreement also provided that "[f]ailure to submit or pursue a grievance under the conditions and within the time and manner stated above shall be construed to be a waiver by the employee and the Union of the formal grievance." J.A. 36. Where such waiver occurred, the Union could only grieve by "appeal[ing] to arbitration and ask[ing] the arbitrator to decide the timeliness issue before addressing the merits." J.A. 47.

New employees received copies of the collective bargaining agreement and were informed of their right to file grievances at their orientations. Both Plaintiffs attended an orientation. Groves received a copy of the agreement, while Hadden does not recall if he did.

Hadden and Groves were fired on May 31, and June 2, 2012, respectively, for failing to meet sales goals after receiving previous disciplinary warnings. Neither Hadden nor Groves contacted the Union about the earlier warnings or about their terminations and neither filed a grievance. AT&T does not

5

notify the Union that it has fired a Union member; generally, the Union learns of a termination only when the employee requests that the Union file a grievance.

On August 22, 2012, Steve Frost, the executive director of labor relations at AT&T, emailed Betty Witte, CWA administrative director, to explain that AT&T had discovered in July that the reports from April and May 2012 that had led to the termination of sixteen employees, including Plaintiffs, were flawed. Frost asked Witte to reach out to the affected employees to let them know that AT&T was offering them a settlement of either $2,500 and reinstatement, or $5,000 without reinstatement. He asked for a response by August 31.

Witte forwarded this email to Gerald Souder, a staff representative for CWA. On August 24, Souder forwarded the email to Les Powell, the president of Local 3702, asking him to contact Plaintiffs, and noting "[t]here may or may not be . . . a grievance filed." J.A. 115. Souder emailed Powell again on September 19 because he had received no response.

Local 3702 had membership cards for Plaintiffs with their contact information, but Powell admits that he made no attempt to contact Plaintiffs because they had not filed grievances or otherwise communicated with the Union. Souder attested that he was "under the impression Local 3702 had been unable to contact

Plaintiffs," J.A. 45, but Powell stated that he never told Souder that he could not locate Plaintiffs.

Groves later learned of the settlement offers independently and informed Hadden. Both contacted Souder, who told them that only the $5,000 offer without reinstatement remained on the table. Plaintiffs each expressed a preference for reinstatement and a desire to file a grievance. Souder responded that there was no provision for filing a grievance beyond the forty-five-day limit.

### B.

Plaintiffs sued AT&T and the Union under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging that AT&T breached the collective bargaining agreement by firing them on the basis of faulty data, and that the Union breached the duty of fair representation by failing to inform them of the settlement offers. Plaintiffs settled with AT&T, and they were reinstated to their former positions in March 2013.

Plaintiffs moved for partial summary judgment as to liability, and the Union moved for summary judgment. After a hearing, the district court denied Plaintiffs' motion and granted the Union's motion. The court held that a threshold requirement for a § 301 action was to establish that the Union "breached [its] duty so as to prevent Plaintiffs from exhausting their claims under the [collective bargaining agreement] against

7

AT&T." Groves v. AT&T Mobility, LLC, No. 8:12-3329-TMC, 2014 WL 3809665, at * 3 (D.S.C. Aug. 1, 2014). Because Plaintiffs "argue[d] only that the Union[] failed to timely notify them of the settlement before it expired"—and not that "the Union breached a duty of fair representation in regard to any grievances"—Plaintiffs failed to meet that threshold. Id.

This appeal followed.

## II.

The central question raised by this appeal is whether a hybrid § 301 suit can properly be used to challenge union conduct that, though obstructive, did not contribute to the employees' failure to exhaust their contractual remedies for the employer's conduct. Because such use would extend the hybrid § 301 suit beyond its logical scope, we hold that it cannot.

## A.

We review a district court's grant or denial of summary judgment de novo. Hunter v. Town of Mocksville, 789 F.3d 389, 395 (4th Cir. 2015), cert. denied 136 S. Ct. 897 (2016). Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, id., "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

8

B.

The hybrid § 301 action exists to avoid the "unacceptable injustice" that would occur if an employee were required to exhaust his contractual remedies even though "the union representing the employee in the grievance/arbitration procedure act[ed] in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983).

The Supreme Court has repeatedly framed the hybrid § 301 action as a solution to that specific injustice: an employee unable to exhaust contractual remedies because of his union's breach of the duty of fair representation. Thus, in Vaca v. Sipes, the Court held that an "employee may seek judicial enforcement of his contractual rights" where "the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." 386 U.S. at 185. Similarly, in Hines v. Anchor Motor Freight, Inc., the Court explained that because the contractual remedies for an employer's mistreatment of an individual employee are "at least in their final stages controlled by union and employer," the hybrid § 301 action provides an alternative remedy in cases

9

where the union "refuse[s] to utilize [the contractual remedies] or, if it does [utilize them], assertedly [does] so discriminatorily or in bad faith."  424 U.S. 554, 564 (1976).

Our sister circuits have placed express and implied limitations on the use of the hybrid § 301 action that align with that understanding of its purpose.  For example, the First and Sixth Circuits both have causal nexus requirements for hybrid § 301 claims.  See Blesedell v. Chillicothe Tel. Co., 811 F.3d 211, 221 (6th Cir. 2016) ("In addition to proving arbitrary, discriminatory, or bad-faith conduct, a hybrid-claim plaintiff must prove that a union's actions or omissions 'more than likely affected' the outcome of the grievance procedure." (quoting Dushaw v. Roadway Express, Inc., 66 F.3d 129, 132 (6th Cir. 1995))); Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 20 (1st Cir. 2003) ("To reach this [hybrid § 301] safe harbor, the claimant must prove an erroneous discharge, a breach of duty on the union's part, and a causal nexus between the two, that is, 'that [the] union's breach of its duty "seriously undermine[d] the integrity of the [grievance] process."'" (alterations in original) (quoting United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 61 (1981))).  The Second Circuit has repeatedly defined hybrid § 301 actions as involving claims "that the union breached its duty of fair representation in redressing [the employee's] grievance against the employer."  White v. White

10

Rose Food, 128 F.3d 110, 113 (2d Cir. 1997); see also McKee v. Transco Prods., Inc., 874 F.2d 83, 86 (2d Cir. 1989) ("A hybrid [§ 301] case is one in which the employee has a cause of action against both the employer and the union. . . . The claim against the union is that the union did not properly represent the employee in pressing his grievance against the employer.").

C.

Consistent with these cases, we hold that a hybrid § 301 claim requires an allegation that the union's breach of its duty of fair representation played some role in the employee's failure to exhaust his contractual remedies. This understanding of the hybrid § 301 claim best accords with the Supreme Court's articulation of the claim's purpose, and our sister circuits' limitations on the claim. To hold otherwise would transform the hybrid § 301 suit from a safeguard for wronged employees whose unions fail to assert the employees' rights, to a tool to bypass the normal exhaustion rule for claims against an employer, any time employees also have some unrelated claim against their union.

Here, Plaintiffs do not allege that the Union's conduct prevented them from grieving their terminations under the collective bargaining agreement. And because Plaintiffs did not file a grievance with the Union, the Union did not know that Plaintiffs were terminated—and therefore did not have an

11

opportunity to discover that AT&T's data was flawed—until after the contractual period for filing a grievance had passed. The Union's failure to contact Plaintiffs regarding the settlement offers was irresponsible at best, and certainly prevented Plaintiffs from accepting AT&T's original reinstatement offer. However, having waived their right to grieve, Plaintiffs were not entitled to that offer under the collective bargaining agreement, and the Union's conduct therefore had nothing to do with their failure to vindicate their rights through the contractually designated procedures.

Plaintiffs contend that because they told the Union they wanted to file grievances as soon as they learned about the faulty data, they "were as diligent in pursuing their contractual remedies as they possibly could have been." Appellants' Br. at 16. This is, at base, a complaint about the terms of the collective bargaining agreement, which requires grievances to be filed within forty-five days "of the action complained of," and does not have any provision for tolling where the underlying facts were unknown or undiscoverable. J.A. 35. Plaintiffs do not allege the Union breached its duty of fair representation in negotiating the collective bargaining agreement, and they thus are bound by its terms.

We do not decide today that an employee must always have attempted to grieve before he can bring a hybrid § 301 claim.

12

In a case where an employee's failure to invoke the grievance process was caused by the union's breach of the duty of fair representation, a hybrid § 301 claim might well be viable. We simply hold that there must be some causal nexus between a union's breach of its duty of fair representation and an employee's failure to exhaust contractual remedies.

Our holding is consistent with those cases that have allowed a hybrid § 301 claim involving a union's breach of the duty of fair representation in its negotiation or amendment of the collective bargaining agreement. See Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138 (2d Cir. 1994); Adkins v. Int'l Union of Elec., Radio, & Mach. Workers, 769 F.2d 330 (6th Cir. 1985). In such cases, the employees are not attacking specific actions by the employers as inconsistent with the collective bargaining agreement, but rather the terms of the collective bargaining agreement itself and the union's role in crafting it. Where that occurs, the union's breach would be causally connected to the employee's failure to exhaust, because requiring the employee to exhaust the allegedly flawed contract's remedies, controlled by the allegedly breaching union, would be an "unacceptable injustice." DelCostello, 462 U.S. at 164.

We hasten to add that our decision does not leave employees without a remedy on these facts, as Plaintiffs could have brought a stand-alone breach of the duty of fair representation

13

claim against the Union.  See O'Neill, 499 U.S. at 67 ("[T]he rule announced in [Vaca]—that a union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith'—applies to all union activity . . . ." (quoting 386 U.S. at 190)); Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 86-87 (1989) ("The duty of fair representation . . . arises independently from the grant under . . . the [National Labor Relations Act] . . . of the union's exclusive power to represent all employees in a particular bargaining unit.  It serves as a 'bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law.'" (quoting Vaca, 386 U.S. at 182)).

III.

Because the undisputed facts make it clear that any breach of the Union's duty of fair representation did not contribute to Plaintiffs' failure to exhaust their contractual remedies, we affirm the district court's judgment.

AFFIRMED

14