PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1035

WILLIAM M. CONRAD,

Plaintiff - Appellant,

v.

CSX TRANSPORTATION, INC.,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, Senior District Judge. (1:13-cv-03730-WMN)

Argued: January 27, 2016            Decided: May 25, 2016

Before NIEMEYER and FLOYD, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Davis wrote the opinion, in which Judge Niemeyer and Judge Floyd joined.

**ARGUED:** Lawrence A. Katz, COFFEY KAYE MYERS & OLLEY, Bala Cynwyd, Pennsylvania, for Appellant. Jacqueline Marie Holmes, JONES DAY, Washington, D.C., for Appellee. **ON BRIEF:** Thomas R. Chiavetta, Emily J. Kennedy, JONES DAY, Washington, D.C., for Appellee.

DAVIS, Senior Circuit Judge:

Appellee CSX Transportation, Inc. charged one of its employees, Appellant William M. Conrad, with "serious" violations of the company's safety policy. Alleging he was disciplined in retaliation for his activities as local chairman of the transportation union, Conrad sued in federal district court under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. The district court granted summary judgment in favor of CSX, concluding that Conrad had failed to show that any CSX employee involved in the disciplinary process had also known about his union activities. Conrad v. CSX Transp., Inc., No. WMN-13-3730, 2014 WL 7184747, at *5 (D. Md. Dec. 15, 2014).

On appeal, Conrad argues that knowledge of an employee's protected activities may be imputed to the decision-makers if any supervisory employee at the company knew of the subordinate employee's protected activity when the decision-maker took the unfavorable personnel action, regardless of whether the person with knowledge played a role in the disciplinary process. We disagree and therefore affirm the judgment.

I.

Conrad has worked at CSX, an international transportation company, as a freight train conductor out of Cumberland, Maryland, since 2003. From 2009 to 2012, he served as local chairman of the United Transportation Union Local 340, during

2

which time he defended his union members against disciplinary actions and ensured that CSX complied with all safety policies. Conrad's tenure in that role gave rise to the two events at issue here, referred to by the parties as the "Deineen Incident" and the "Demmler Yard Incident."

The Deineen Incident involved local union member James Deineen and preceded Conrad's first disciplinary charge. In January 2011, Deineen, a conductor, was injured while applying a handbrake at Cumberland Yard. Deineen reported his accident and left work for the day. CSX supervisors, however, instructed Deineen to return to the yard to recreate the accident. Deineen, having suffered an injury and having worked 13 hours already, contacted Conrad to discuss CSX's request. Believing Deineen was due a rest period under the Hours of Service Act, 49 U.S.C. § 21101 et seq., Conrad advised Deineen that he did not need to return to work. Conrad informed Trainmaster Ron Baer of his intent to report the alleged Hours of Service Act violation, and indeed made the report to Michel Bull, a Federal Railroad Administration representative.

Less than a month later, on February 9, 2011, Cumberland Terminal Superintendent Ray Morriss, Assistant Terminal Superintendent Keith Stafford, and Trainmaster Eric Koelker accompanied a new trainmaster, Mike Drummond, to an area west of Cumberland for training. While there, they observed Conrad stop

3

his train at a bow-handled switch and, before checking the switch, operate the switch with one hand—a violation of CSX's safety policy. Later that day, CSX charged Conrad with a "serious offense" for the rule violation. J.A. 216. Following the disciplinary charge, Conrad opted to take a "time out," id., avoiding formal disciplinary procedures by submitting to a meeting with a CSX manager and a union representative.

Some six months later, the Demmler Yard Incident occurred. In August 2011, CSX Conductors Scott Sechler and Christopher Hose were operating a train that had run out of fuel near Demmler Yard, a railroad yard in western Pennsylvania. Their train blocked the primary artery in and out of the yard, known as the "main line," obstructing the passage of other trains. A CSX supervisor ordered Sechler and Hose to switch their locomotive with one from Demmler Yard to move the disabled train, but Sechler refused to switch locomotives.

The conditions at Demmler Yard made it difficult to operate trains in the area, so CSX and the United Transportation Union had settled a union safety complaint by mandating that conductors be qualified before working there. Sechler knew that he and Hose were not qualified to enter Demmler Yard. Although CSX offered to send a qualified employee to help navigate the locomotive switch, Sechler persisted and, being a local union member, called Conrad for advice. Conrad told Sechler that he

4

could not enter the yard. And in a subsequent phone call, Conrad conveyed to Trainmaster Danielle Renner that he had advised Sechler not to enter Demmler Yard.

Later that month, on August 26, 2011, CSX Senior Road Foreman of Engines Bill Diamond and Trainmaster Ron Baer saw Conrad violate a number of safety procedures in Cumberland Yard. Diamond and Baer were in Cumberland Yard for operational testing, and, while there, they observed Conrad operate a train without his radio on, fail to use proper identification in conducting a radio check, and fail to use both hands when operating a switch. CSX charged Conrad with "serious offense" rules violations for that conduct. J.A. 196.

After exhausting his administrative remedies, Conrad filed suit against CSX in federal district court, alleging two counts of retaliation in violation of the FRSA. CSX moved for summary judgment, arguing in part that none of the CSX employees who witnessed Conrad's rule violations and initiated disciplinary actions knew about his safety complaints. The district court agreed and held that "at least one person involved in the adverse employment decision must have knowledge of the protected activity." See Conrad, 2014 WL 7184747, at *4. Concluding that "Conrad ha[d] not provided sufficient admissible evidence from which a jury could conclude that there was any knowledge of his alleged protected activity among any of the individuals involved

in the decision-making process to discipline him," the district court granted summary judgment in favor of CSX. See id. at *4, *6. Conrad timely appealed.

## II.

### A.

We review the district court's grant of summary judgment de novo. Groves v. Commc'n Workers of Am., 815 F.3d 177, 180 (4th Cir. 2016) (citation omitted). "Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. at 181 (citations and internal quotation marks omitted).

### B.

For context, we begin with an overview of the relevant statutory framework and the applicable liability standards. Congress enacted the FRSA "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. To that end, the FRSA prohibits railroads from discriminating against employees who engage in certain safety-related activities. See id. § 20109(a). Relevant here, the FRSA protects employees from disciplinary action for "provid[ing] information . . . regarding any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad

6

safety." Id. § 20109(a)(1). The FRSA likewise protects employees who "report[], in good faith, a hazardous safety or security condition." Id. § 20109(b)(1)(A).

Like other federal whistleblower statutes, the FRSA is governed by the burden-shifting framework set forth in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"). See id. § 20109(d)(2)(A)(i); see also, e.g., 18 U.S.C. § 1514A(b)(2)(C) (Sarbanes-Oxley Act) (incorporating the rules and procedures of AIR-21); 42 U.S.C. § 5851(b)(3) (Energy Reorganization Act) (same). Thus, to maintain an FRSA retaliation claim past the summary judgment stage, a plaintiff must project sufficient admissible evidence to establish that: "(1) [the employee] engaged in [a] protected activity; (2) the employer knew that [the employee] engaged in the protected activity; (3) [the employee] suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." Feldman v. Law Enf't Assocs. Corp., 752 F.3d 339, 344 (4th Cir. 2014) (citation and internal quotation marks omitted). The absence of probative evidence as to any single element necessary to establish a prima facie claim terminates the action. See Litt v. Republic Servs. of S. Nev., ARB Case No. 08-130, 2010 WL 3448544, at *3 (Dep't of Labor Aug. 31, 2010). If the employee establishes a prima facie claim, then the burden shifts to the

7

employer to demonstrate "by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity." Feldman, 752 F.3d at 345 (citation omitted).

## C.

The district court granted summary judgment in favor of CSX based on the evidentiary insufficiency as to the second prong of the AIR-21 prima facie standard. In other words, the district court concluded that Conrad could not show that CSX "knew that [he had] engaged in the protected activity." Feldman, 752 F.3d at 344 (citation and internal quotation marks omitted); Cf. Conrad, 2014 WL 7184747, at *4. On appeal, as they did below, the parties offer two opposing theories of what constitutes knowledge under the FRSA. Conrad argues that he can meet the knowledge requirement if any supervisory employee at the company knew of his protected activities at the time of the unfavorable personnel action. CSX responds that, to the contrary, knowledge must be tied to a decision-maker involved in the unfavorable action.

Although this Circuit has not previously had occasion to address the knowledge sufficient to sustain an FRSA retaliation claim, the Administrative Review Board of the U.S. Department of Labor ("ARB") has explained that an employee "must establish that the decision-makers who subjected him to the alleged

8

adverse action were aware of the protected activity." Rudolph v. Nat'l R.R. Passenger Corp., ARB Case No. 11-037, 2013 WL 1385560, at *9 (Dep't of Labor Mar. 29, 2013); see also Litt, 2010 WL 3448544, at *3, *5 (concluding, under the Surface Transportation Assistance Act, which required a showing by a preponderance of the evidence that the employer "was aware of the protected activity," that the employee did not establish a prima facie case of retaliation because he failed to show that "any of the decision-makers involved in his termination knew that he engaged in any protected activity"). Moreover, the ARB has added that it is "insufficient" to "demonstrat[e] that an employer, as an entity, was aware of the protected activity." Rudolph, 2013 WL 1385560, at *9; see also Kuduk v. BNSF Ry. Co., 768 F.3d 786, 790-91 (8th Cir. 2014) (a lower-level supervisor's knowledge was not sufficient where the "decision-makers had no knowledge—actual or constructive—of [the employee's] protected activity").

We conclude that the above cited authorities are sound and persuasive, and we therefore adopt the same interpretation: The "knowledge" relevant for a retaliation claim under the FRSA must be tied to the decision-maker involved in the unfavorable personnel action. As the district court concluded, Conrad has failed to show that such knowledge existed here.

9

Conrad claims that CSX brought his February 2011 disciplinary charges in retaliation for his decision to report an Hours of Service Act violation in connection with the Deineen Incident. He has not marshaled evidence, however, that any of the four CSX employees who observed his conduct that month and charged him with a violation were aware of his January Hours of Service Act complaint. Instead, CSX has produced declarations from the four employees, all of whom attest that they did not know of the complaint or any other safety concerns that Conrad may have previously raised. Conrad has produced no evidence to dispute their assertions.

Conrad also argues that, because he notified Trainmaster Baer that he intended to file an Hours of Service Act complaint, CSX had knowledge of his protected activity before it charged him with the February 2011 safety violation. This argument fails because Conrad has not demonstrated that Baer had any role in the February 2011 disciplinary charges. Although Conrad argues on appeal that a jury may assume that Baer informed Stafford of Conrad's complaint, Stafford (who did observe Conrad's February 2011 safety violation) attested that he had no knowledge of the Hours of Service Act complaint. Conrad has not produced any evidence to call into question Stafford's sworn statements. To the extent Conrad means to suggest that summary judgment should be denied to a moving party on mere speculation

10

that a jury might arbitrarily disbelieve a fellow employee's testimony, we reject such a suggestion. Accordingly, Conrad has failed to generate a genuine dispute of material fact as to the knowledge element of his claim arising from the Deineen Incident.

Conrad's retaliation claim related to the Demmler Yard Incident fails for the same reason. Diamond and Baer reported Conrad's safety violations in August 2011. But Conrad has not marshaled any evidence that Diamond or Baer knew that he had instructed Sechler not to enter the Demmler Yard. As we have explained, Conrad had the burden to produce such evidence. See Feldman, 752 F.3d at 344. And Diamond has denied knowing about "any specific safety complaints" that "Conrad [had] made during his employment with [CSX]."* J.A. 196.

At bottom, Conrad urges us to rely on a series of inference upon inference, based on the chain of command, to conjure a

---

*  Baer had also stated that he "d[id] not recall any specific safety complaints" that "Conrad [had] made during his employment with [CSX]." J.A. 81. This statement by Baer arguably conflicts with Conrad's testimony that he told Baer about his intention to file the Hours of Service Act complaint related to the Deineen Incident. See J.A. 378. Nevertheless, because Conrad does not argue that his August 2011 disciplinary charges arose out of the February Deineen Incident, we regard as immaterial, for purposes of CSX's motion for summary judgment, the ostensible conflict in the recollections of Conrad and Baer with respect to Baer's alleged knowledge of the Hours of Service Act complaint related to the Deineen Incident.

11

scheme among higher-level CSX supervisors who were aware of his protected activity and sought to silence his FRSA complaints because he was "a thorn in [their] side." Appellant's Br. 6. But Conrad offers no evidence that his protected activity, or any animus derived from such activity, was communicated through a chain of CSX employees. Such unsupported inferential leaps are no adequate substitute for actual evidence. See Litt, 2010 WL 3448544, at *4 ("Litt's mere assertions that it can be inferred that [the decision-makers] did know he filed the complaint are not sufficient to constitute circumstantial evidence to establish that Republic was aware of Litt's . . . alleged protected activity by a preponderance of the evidence.").

In sum, because Conrad does not present sufficient evidence that the relevant CSX decision-makers knew of his protected activities, his claims fail as a matter of law at the prima facie stage.

## III.

For the reasons set forth, the judgment of the district court is

AFFIRMED.
