**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1634

MICHAEL LOWERY,

Plaintiff - Appellant,

v.

CSX TRANSPORTATION, INC.,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
J. Frederick Motz, Senior District Judge.  (1:14-cv-00788-JFM)

Submitted:  April 12, 2017                                  Decided:  May 26, 2017

Before GREGORY, Chief Judge, and THACKER and HARRIS, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

P. Matthew Darby, H. David Leibensperger, BERMAN, SOBIN, GROSS, FELDMAN &
DARBY, L.L.P., Lutherville, Maryland, for Appellant.  Jacqueline M. Holmes, Thomas
R. Chiavetta, JONES DAY, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael Lowery filed this action against CSX Transportation, Inc. ("CSX"), under the Federal Railroad Safety Act ("FRSA"), alleging that CSX retaliated against him for engaging in protected activity. Lowery was suspended after being charged with violating workplace jewelry guidelines and making a false statement. According to Lowery, however, he was in fact suspended in retaliation for reporting various unsafe workplace conditions. The district court granted summary judgment in favor of CSX. Lowery now appeals, arguing that the district court: (1) employed the wrong legal standard in granting summary judgment; (2) erred in concluding that the relevant decision-makers had no knowledge of his protected activities; and (3) impermissibly required Lowery to submit proof of disparate treatment.

"We review the district court's grant of summary judgment de novo, applying the same standard as the district court . . . [and] construing the evidence in the light most favorable to . . . the non-movant." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 207 (4th Cir. 2014). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In order to establish a retaliation claim under the FRSA:

a plaintiff must project sufficient admissible evidence to establish that: (1) the employee engaged in a protected activity; (2) the employer knew that the employee engaged in the protected activity; (3) the employee suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action.

2

*Conrad v. CSX Transp., Inc.*, 824 F.3d 103, 107 (4th Cir. 2016) (internal quotation marks and brackets omitted). "If the employee establishes a prima facie claim, then the burden shifts to the employer to demonstrate by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity." *Id.* (internal quotation marks omitted). "The 'knowledge' relevant for a retaliation claim under the FRSA must be tied to the decision-maker involved in the unfavorable personnel action." *Id.* at 108.

Lowery undoubtedly engaged in protected activities, and his suspension constituted an unfavorable personnel action. Lowery's three safety reports in 2010 qualified as protected activities under the FRSA. Although CSX argues that Lowery's 2011 reports regarding the Wheeling & Lake Erie Railroad ("W&LE") and the Demmler Yard incidents did not qualify as protected activities, the FRSA does not require only a violation of a federal law, rule, or regulation; it also protects employees who "report[], in good faith, a hazardous safety or security condition." *Conrad*, 824 F.3d at 107 (quoting 49 U.S.C. § 20109(b)(1)(A) (2012)). We therefore conclude that both incidents related to hazardous safety conditions.

Second, Lowery adequately demonstrated that the relevant decision-makers were aware of his protected activities. Three decision-makers arguably were involved in adverse action against Lowery: Terminal Trainmaster Eric Koelker made the decision to charge Lowery with rules violations regarding the jewelry policy and making a false statement; Trainmaster Seth Fowler conducted the disciplinary hearing; and Division Manager John Wright made the ultimate decision finding Lowery guilty of making a

3

false statement. Regardless of whether the decision-makers possessed direct knowledge of Lowery's protected activities, knowledge may be tied to all three decision-makers through Trainmaster Ron Baer under the cat's paw theory. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) (discussing theory); *Conrad*, 824 F.3d at 107-08 (adopting holding in *Rudolph v. Nat'l R.R. Passenger Corp.*, ARB Case No. 11-037, 2013 WL 1385560, at *11-12 (Dep't of Labor Mar. 23, 2013), that knowledge is imputable to decision-makers under cat's paw theory). Thus, a plaintiff "need not prove that the decision-maker responsible for the adverse action knew of the protected activity if it can be established that those advising the decision-maker knew, regardless of their motives." *Rudolph*, 2013 WL 1385560, at *12.

Baer had contact with all three decision-makers. Viewing the facts in the light most favorable to Lowery, he reported directly to Baer two of the 2010 safety issues, Baer knew about the December Yard incident, having discussed the issue directly with Lowery, and Baer advised all three decision-makers as to the issue of whether Lowery had made a false statement, a major rules violation. Furthermore, Baer directly participated in the decision-making process through his testimony at the disciplinary hearing. Baer's testimony proved to be critical to Fowler's recommendation that Lowery be found guilty of making a false statement and to Wright's ultimate determination of guilt.

Moreover, viewing the facts in the light most favorable to Lowery, some evidence suggests that Baer's testimony was the result of retaliatory animus, and, thus, a genuine issue of material fact should have precluded summary judgment on this point. For

4

example, deposition testimony established that local managers, a group that included Baer, were displeased with Lowery's safety push and reports. Baer also expressed exasperation at Lowery's activities and advised employees to stay away from Lowery and other union representatives.[1] Additionally, Baer's testimony arguably was influenced by Ray Morriss, the head of the Cumberland Terminal where Lowery worked and Baer's immediate supervisor. Morriss had direct knowledge of Lowery's protected activities, held clear animosity toward Lowery, and believed that Lowery was a liar. Athough Baer acted only as a witness at the disciplinary hearing, his testimony sufficiently imputes his knowledge to the decision-makers who relied on that testimony. *See Staub*, 562 U.S. at 422 ("[I]f the independent investigation relies on facts provided by the biased supervisor—as is necessary in any case of cat's-paw liability—then the employer (either directly or through the ultimate decisionmaker) will have effectively delegated the factfinding portion of the investigation to the biased supervisor.").[2]

As to the final element of the prima facie case, we conclude that a genuine issue of material fact exists as to whether Lowery's protected activities were a contributing factor to the unfavorable personnel action. *See Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d

---

[1] We assume for the purposes of this appeal that the disputed testimony is admissible as nonhearsay or under various hearsay exceptions. Neither party has submitted sufficient evidence or argument to determine definitively whether the contested statements are in fact admissible, and we therefore leave that determination to the district court in the first instance. Nevertheless, even if we were to exclude any contested testimony, we still would conclude that sufficient evidence supports a prima facie case.

[2] We do not believe the case on which CSX relies, *Kuduk v. BNSF Railroad Co.*, 768 F.3d 786 (8th Cir. 2014), is to the contrary.

339, 348 (4th Cir. 2014) (discussing what constitutes a contributing factor).[3] We note that Lowery established he received greater discipline than other employees who violated CSX's jewelry policy.[4] *See Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013) ("[C]omparator evidence . . . [is] a particularly probative means for discerning whether a given adverse action was the product of a discriminatory motive."). Furthermore, viewing the facts in the light most favorable to Lowery, temporal proximity supports a conclusion of retaliatory animus, as Lowery was charged with the rule violations 16 days after the W&LE incident occurred and only 1 day after the Demmler Yard incident occurred. Koelker's testimony on the timing of the charges also supports an inference of retaliatory animus.[5] We therefore conclude that Lowery has established a prima facie case of retaliation under the FRSA.

CSX nevertheless argues that, even if Lowery established a prima facie case of retaliation, the district court's judgment should be affirmed on the alternate ground that CSX demonstrated by clear and convincing evidence that it would have disciplined Lowery absent the protected activity. "[C]lear and convincing has been defined as

---

[3] *Feldman* addressed a retaliation claim under the Sarbanes-Oxley Act, which employs the same standard as an FRSA claim. *Conrad*, 823 F.3d at 107.

[4] Although CSX focuses on the false statement charge as the relevant conduct, the charge for the alleged jewelry violation also qualifies as an unfavorable personnel action. *See* 49 U.S.C. § 20109(a), (b) (railroad carriers "may not . . . reprimand, or in any other way discriminate against an employee" for engaging in protected activity).

[5] We recognize that the testimony on this point is in dispute. However, we must view the evidence in the light most favorable to Lowery for the purposes of summary judgment.

evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (ellipsis and internal quotation marks omitted). We conclude that CSX has not produced sufficient evidence to satisfy this burden, and we therefore decline to affirm the court's judgment on that alternate ground.[6]

Accordingly, we vacate the district court's judgment and remand for further proceedings consistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*VACATED AND REMANDED*

---

[6] Because we vacate for the reasons outlined above, we do not address Lowery's remaining arguments.